576 F.2d 465
 Fed. Sec. L. Rep. P 96,438
Frank DENNY, Plaintiff-Appellant,
v.
Charles F. BARBER, James H. Binger, Willard C. Butcher, John
T. Connor, C. W. Cook, J. Richardson Dilworth, Patricia
Roberts Harris, Theodore M. Hesburgh, William R. Hewlett, J.
K. Jamieson, Ralph Lazarus, Robert D. Lilley, Leonor F.
Loree, II, John H. Loudon, Jeremiah Milbank, Charles F.
Myers, Jr., James A. Perkins, David Rockefeller, J. Henry
Smith, Whitney Stone, John E. Swearingen, The Chase
Manhattan Corporation and Peat, Marwick, Mitchell & Co.,
Defendants-Appellees.
 No. 666, Docket 77-7561.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 24, 1978.
Decided May 17, 1978.
 
 Irving Bizar, New York City (Malcolm S. Taub, New York City, of counsel), for plaintiff-appellant.
 William E. Hegarty, New York City (Cahill, Gordon & Reindel, and Allen S. Joslyn, Patricia A. Pickrel, and Leonard P. Novello, New York City, of counsel), for defendant-appellee, Peat, Marwick, Mitchell & Co.
 Edward J. Reilly, New York City (Milbank, Tweed, Hadley & McCloy, and William E. Jackson and Peter A. Copeland, New York City, of counsel), for defendants-appellees, The Chase Manhattan Corp. and Certain Individuals.
 Before FRIENDLY, MULLIGAN and MESKILL, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 This is an appeal from an order of Judge Lasker in the District Court for the Southern District of New York dismissing an amended complaint in a stockholder's purported class action alleging violations of §§ 10(b), 18 and 20 of the Securities Exchange Act and the Securities and Exchange Commission's Rule 10b-5 for failure to allege fraud with the "particularity" required by F.R.Civ.P. 9(b) and to state a claim on which relief could be granted under F.R.Civ.P. 12(b)(6).
 
 
 2
 Plaintiff Frank Denny, who purchased 15 shares of defendant The Chase Manhattan Corporation (the Corporation) on December 12, 1974 at 271/4 per share, close to the low for the year, sought to represent a class of all persons who had purchased stock or other securities of the Corporation since January 1, 1973 upon the basis of false and fraudulent statements of the Corporation and either sold such securities at a loss or still retain them.[1] The defendants are the Corporation, its directors and principal officers, and Peat, Marwick, Mitchell & Co. (PMM), its certified public accountants. Judge Lasker dismissed the initial complaint, filed on February 3, 1976, which did not even identify the statements alleged to be false and misleading, for noncompliance with F.R.Civ.P. 9(b), but granted leave to "replead within twenty days, upon an adequate description of the facts contributing to his (Denny's) various beliefs and upon a particular statement of the alleged fraud," 73 F.R.D. 6 (S.D.N.Y.1977). The judge recognized that F.R.Civ.P. 9(b) must be reconciled with F.R.Civ.P. 8(a)(2) which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" but insisted that plaintiff "identify the offending publications" and "disclose those facts that have led him to believe that defendants' publications are false"; also "the facts recited must be such as to permit an inference of fraud." 73 F.R.D. at 9.
 
 
 3
 The amended complaint sought to meet the identification requirement by alleging on information and belief that "commencing on or about July 1, 1973, and continuing to date," defendants engaged in a scheme to misrepresent the Corporation's financial condition, and "(a)s part of said scheme . . . issued to the public false and fraudulent interrelated annual and interim financial statements, proxy solicitations and prospectuses ("Statements") during the period including the annual reports for 1973, 1974 and 1975." The falsity and fraud concerned loans by The Chase Manhattan Bank (the Bank), a wholly owned subsidiary of the Corporation, to Chase Manhattan Mortgage and Realty Trust (CMART), and other real estate investment trusts (REIT), private builders and developers; the Bank's extensive foreign activities and loans, including loans to governments, governmental agencies and enterprises located in the "third world countries" and behind the "iron curtain"; the amounts reserved for loan losses; alleged delays in writing off unspecified loans known to be uncollectible; investments "in the debt obligations and other securities of States and other political subdivisions of the United States, including the City and State of New York, and various subdivisions thereof" which allegedly had become "increasingly risky and speculative," without providing adequate reserves or properly disclosing the risks; possible liability to third parties for the sale of New York City securities; alleged nonpayment of advisory fees accrued from CMART; and inadequate management policies which led to the undisclosed overvaluation, in the amount of $32.8 million, of securities held by the Corporation.[2] The amended complaint contained general allegations of knowledge or recklessness on the part of the Corporation and the individual defendants designed to comply with Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). So far as concerned PMM, the amended complaint alleged that PMM knew or should have known that it was relying upon the judgment of management, had failed to take appropriate steps to substantiate that judgment, and "knew, was reckless in failing to know or ascertain, or should have known all of the facts set forth herein."
 
 
 4
 The Corporation and the individual defendants countered with a motion supported by an affidavit of the Corporation's Controller, Michael P. Esposito, Jr., to which were annexed its annual reports for 1971-1975 and its Form 10-K for 1973, seeking dismissal of the complaint under F.R.Civ.P. 9(b) and 12(b)(6) or, alternatively, summary judgment under F.R.Civ.P. 56(b). PMM also moved for dismissal of the entire complaint or, in the alternative, for summary judgment with respect to five claims and dismissal of the remainder. Plaintiff's counter-statement pursuant to General Rule 9(g) of the district court, in addition to mentioning a prospectus of the Corporation dated August 2, 1974 and a proxy statement of September 9, 1974, contained the following:
 
 
 5
 Plaintiff has no information respecting advances of monies, loans, renegotiations thereof, purchases of loans, property swaps and whether advisory fees were, in fact, paid. He requires discovery under Rule 56(f) since all of the information and evidence are in the exclusive possession and control of defendants.
 
 
 6
 Judge Lasker handled the matter most usefully in our view by conducting a hearing in which, after announcing his tentative view that the amended complaint was still deficient, he afforded plaintiff's counsel an opportunity to take up the amended complaint in detail and convince him otherwise. He concluded, in a memorandum, that many allegations remained "vague and conclusory"; that where specificity had been provided, the complaint "merely recited neutral facts which are irrelevant to the claims that they embellish, and which do not permit an inference of wrong-doing"; and that the events upon which Denny based his claim of fraud occurred after his purchase whereas the pre-purchase events constituted merely claims of mismanagement. Accordingly he dismissed the complaint as failing to meet the requirements of F.R.Civ.P. 9(b) and to state a claim under F.R.Civ.P. 12(b)(6).
 
 
 7
 Plaintiff took a timely appeal to this court. Thereafter he moved for leave to file a second amended complaint. Judge Lasker correctly denied this on the ground that, in view of the filing of the appeal, he was without jurisdiction to allow the amendment. See Segal v. Gordon, 467 F.2d 602, 608 n. 12 (2 Cir. 1972); Grand Opera Co. v. Twentieth Century-Fox Film Co., 235 F.2d 303 (7 Cir. 1956); Droppleman v. Horsley, 372 F.2d 249 (10 Cir. 1967); Thompson v. Harry C. Erb, Inc., 240 F.2d 452, 454 (3 Cir. 1957); Merritt-Chapman & Scott Corp. v. City of Seattle, 281 F.2d 896 (9 Cir. 1960); 3 Moore, Federal Practice P 15.07(2), at 856-57; 6 Wright & Miller, Federal Practice and Procedure § 1489, at 445.
 
 
 8
 Although Denny brought this suit as a class action on behalf of all persons who had purchased securities of the Corporation since January 1, 1973, and had sold such securities at a loss or still retained them, the district court held and Denny does not seriously dispute that the complaint must be dismissed if it did not adequately allege the issuance of fraudulent misleading statements prior to his purchase on December 12, 1974. Apart from the fact that the action was never certified as a class action under F.R.Civ.P. 23(c)(1), if Denny himself cannot share in any recovery because no fraudulent statements were issued before his purchase,[3] see Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 737-38, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); Greenstein v. Paul, 275 F.Supp. 604 (S.D.N.Y.1967), aff'd, 400 F.2d 580, 581 (2 Cir. 1968); Halperin v. Edwards, 430 F.Supp. 121, 124-25 (E.D.N.Y.1977), he would not be a proper representative of persons who bought securities after fraudulent statements were issued if indeed this occurred. Greenstein v. Paul, supra; Basch v. Talley Industries, Inc., 53 F.R.D. 14, 19 (S.D.N.Y.1971) (Gurfein, J.). See generally Dolgow v. Anderson,43 F.R.D. 472, 492 (E.D.N.Y.1968), rev'd on other grounds, 438 F.2d 825 (2 Cir. 1971); 3B Moore, Federal Practice P 23.04, at 23-254. As Judge Hufstedler said in a slightly different context, 492 F.2d 136, 147 (9 Cir. 1973) (dissenting opinion) a statement which the Supreme Court approved in Blue Chip Stamps v. Manor Drug Stores, supra, 421 U.S. at 739, 95 S.Ct. at 1927 (1975), damage actions under Rule 10b-5 can be "brought only by those persons whose active participation in the marketing transaction promises enforcement of the statute without undue risk of abuse of the litigation process and without distorting the securities market."
 
 
 9
 With the inquiry thus limited we think the amended complaint was properly dismissed. Of the other reports mentioned so generally by plaintiff, the only ones that antedated his purchase were the Corporation's Annual Report for 1973, the contents of which we have been able to examine because it is an exhibit to the affidavit in support of defendants' motions to dismiss and/or for summary judgment, see F.R.App.P. 10; 9 Moore, Federal Practice P 210.04(2), and "interim financial statements, proxy solicitations and prospectuses" for 1973 and the first three quarters of 1974, the misstatements in which are nowhere described.
 
 
 10
 The amended complaint does not state what items in the 1973 Annual Report were knowingly false. The brief for the Corporation and the individual defendants lists 16 instances in which the complaint refers to events occurring in whole or in part after December, 1974, the date of plaintiff's purchase, almost all of which were revealed in the Corporation's annual reports for later years. Such allegations as arguably relate at least in part to events prior to December, 1974 do not allege fraud with sufficient particularity. Thus it is said that the Bank's foreign operations and loans, which are indeed depicted with enthusiasm in the 1973 Report, were "speculative and risky." Yet there is no specification of what loans, at what times, and in what amounts were "risky." In the absence of such particulars, and given the myriad of foreign loans made by the Bank during the early 1970's, the simple use of the epithet "risky" is no better than a "mere conclusory allegation to the effect that defendant's conduct was fraudulent," which we have held to be insufficient. Segal v. Gordon, 467 F.2d 602, 607 (2 Cir. 1972), quoting Shemtob v. Shearson, Hammill & Co., 448 F.2d 442, 444 (2 Cir. 1971). Under the circumstances, such a pleading does not "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," Shemtob, supra, 448 F.2d at 444. Moreover, even if we were to find this allegation sufficiently particular, there is considerable doubt whether it alleges a violation of 10b-5. Not every "risky" investment rises to the level of fraud because the risk is insufficiently disclosed.
 
 
 11
 The amended complaint is replete with other allegations suffering the same deficiencies. For example, plaintiff alleges that of the loans made to REITs other than CMART, more than half were "speculative and risky" construction and development loans. Plaintiff also alleges that the Bank invested in securities of states and cities, and that the continuation of such investments had become "risky and speculative." Again, no specification of transactions is provided, and there is not even an indication of the date at which defendants knew the investments had become so unacceptably "risky" that disclosure was required. The defendant is entitled to a narrower delineation of the charges than the plaintiff has provided.
 
 
 12
 In sum, the complaint is an example of alleging fraud by hindsight. For the most part, plaintiff has simply seized upon disclosures made in later annual reports and alleged that they should have been made in earlier ones. While greater clairvoyance in 1973 might have led to a realization that foreign governments and enterprises might encounter difficulties, particularly in consequence of the dramatic increase in petroleum prices; that REITs, including CMART, would run into serious trouble, necessitating a transaction between CMART and the Bank fully described in the 1975 Annual Report (pp. 5, 42); and that New York City would come to the verge of bankruptcy late in that year, failure to make such perceptions does not constitute fraud. Nowhere does the complaint allege with the required particularity transactions about which defendants in fact had such perceptions or were reckless in not having them when the 1973 and early 1974 reports were issued.[4]
 
 
 13
 Plaintiff's counsel has called our attention to a number of district court decisions, notably duPont v. Wyly, 61 F.R.D. 615 (D.Del.1973), and Denny v. Carey, 72 F.R.D. 574 (E.D.Pa.1976), in the latter of which he was counsel for the same plaintiff as here, which are alleged to have sustained complaints no more specific than this. Defendants dispute this and counter with an equal number of district court decisions alleged to have dismissed complaints more specific than this one. We see no profit in attempting to analyze these decisions, which may or may not be consistent and each of which necessarily rests on its particular facts. We follow the rule laid down by our own decisions, notably Shemtob v. Shearson, Hammill & Co., 448 F.2d 442, 444 (2 Cir. 1971), Segal v. Gordon, 467 F.2d 602, 607 (2 Cir. 1972), Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, 378-80 (2 Cir. 1974), cert. denied, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1965), and Felton v. Walston and Co., 508 F.2d 577 (2 Cir. 1974). Recognizing the difficulties encountered by a small stockholder in framing a Rule 10b-5 complaint against a large corporation which has not been the subject of a publicized official investigation and the consequent need, noted in Schlick, for relaxing the requirement that allegations of fraud should be based on something more than information and belief, there still must be more than vague allegations that, as shown by subsequent developments, the corporation's true financial picture was not so bright in some respects as its annual reports had painted and that the defendants knew, or were reckless in failing to know, this. The admission in counsel's Rule 9(g) statement that he had simply nothing with which to counter Esposito's affidavit in the absence of discovery is significant. The Supreme Court has admonished that to the extent that such discovery "permits a plaintiff with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value, rather than a reasonably founded hope that the process will reveal relevant evidence, it is a social cost rather than a benefit." Blue Chip Stamps v. Manor Drug Stores, supra, 421 U.S. at 741, 95 S.Ct. at 1928.
 
 
 14
 Plaintiff's counsel also invites us to consider the proposed second amended complaint. This differs primarily in making clear which allegations refer to the period prior to Denny's 15 share purchase on December 12, 1974, and omitting allegations of transactions which clearly postdated that transaction. Although the second amended complaint was not filed until after the district court had lost jurisdiction by reason of the plaintiff's appeal from the order dismissing the first amended complaint, this court, if so advised, could itself now grant leave to amend or remand to the district court to allow amendment, see 3 Moore, Federal Practice PP 15.07(2) at 857, 15.11 at 970; 6 Wright & Miller, Federal Practice and Procedure § 1489; Oil, Chemical & Atom. Workers Int. Union v. Delta Refin. Co., 277 F.2d 694 (6 Cir. 1960); Griffin v. Locke, 286 F.2d 514 (9 Cir. 1961), or affirm the dismissal without prejudice to the district court's entertaining an application to amend, Moviecolor Limited v. Eastman Kodak Co., 288 F.2d 80 (2 Cir.), cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961).
 
 
 15
 We decline to do this. Plaintiff clearly has no right to a second amendment, F.R.Civ.P. 15(a), and this is not a case where "justice so requires," id., even apart from our doubt whether the proposed second amended complaint in fact cures the defects of the first. Despite plaintiff's protestations, this case is not like Goldberg v. Meridor, 567 F.2d 209 (2 Cir. 1977), cert. denied, --- U.S. ----, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978), where the appellant was unaware of the deficiencies in his complaint when he first amended it.[5] Here Judge Lasker, in dismissing the initial complaint, had put plaintiff's counsel on the plainest notice of what was required. Whether the defects in the amended complaint arose from the fault of counsel or because there was simply no basis for a proper complaint, this case, where plaintiff can rid himself of his $400 investment at a profit, is scarcely one for us to exercise our discretion to require the busy district judge to engage in still a third go-around.
 
 
 16
 Affirmed.
 
 
 
 [1]
 As this is written, the market price of the Corporation's stock is some $31.9 per share. On the date the original complaint was filed, it sold for $30.5 per share. When the amended complaint was filed, Chase stock sold for $32.6
 
 
 [2]
 In fact this was disclosed in October, 1974, before Denny bought his stock, see In re Chase Manhattan Corp. (1967-77 Transfer Binder) Fed.Sec.L.Rep. (CCH) P 80,729, at 86,901-04
 
 
 [3]
 There is the additional problem whether Denny could prove any damages. The principal basis for his believing there had been earlier fraudulent misstatements seems to have been the Corporation's own reports for 1974 and 1975, and he had ample opportunity to sell his 15 shares at a profit after these were published, see note 1 supra
 
 
 [4]
 While we have written largely in terms of the Corporation and its principal officers, our remarks apply a fortiori to outside directors and to PMM. Similarly, although we have written in terms of Rule 10b-5, our conclusions apply a fortiori to the claim under § 18 of the Securities Exchange Act. The complaint does not identify any misleading statement in a document filed with the SEC. Also, the complaint wholly failed to set forth facts sufficient to invoke § 20(a)
 
 
 [5]
 In Goldberg, dismissal of the first complaint had gone solely on failure to comply with § 627 of the New York Business Corporation Law in regard to a state claim. The adequacy of the federal claim was first considered with respect to the amended complaint, and plaintiff had shown his ability to make specific allegations that would cure the asserted deficiency