**Kalman ROSS and Anita Ross, Plaintiffs,**

v.

**A. H. ROBINS COMPANY, INC., et al., Defendants.**

**No. 77 Civ. 1409.**

United States District Court, S. D. New York.

Jan. 8, 1979.

Eric L. Keisman, Marian R. Probst, Thomas A. Bernstein, Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiffs.

William E. Hegarty, Miles M. Tepper, Charles A. Gilman, Cahill, Gordon & Reindel, New York City, Robert H. Patterson, Jr., R. Gordon Smith, Ann Marie Whittemore, McGuire, Woods & Battle, Richmond, Va., for defendants.

## OPINION AND ORDER

PIERCE, District Judge.

This is a proposed class action brought by two shareholders of the defendant A. H. Robins Company, Inc. ("Robins") against that corporation and several of its directors for violations of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.-10b–5, as well as for common law fraud and breaches of the fiduciary duties of the individual defendants. The defendants have moved to dismiss the complaint in its entirety on the grounds that: (1) this Court lacks subject matter jurisdiction over the plaintiffs' claims, Fed.R.Civ.P. 12(b)(1); (2) the complaint, as amended, fails to comply with the pleading requirements of Fed.R.Civ.P. 9(b); and (3) there is no implied cause of action under Section 10(b) of the Securities Exchange Act of 1934 since Section 18 of that Act provides the exclusive private remedy for the acts or failures to act complained of, Fed.R.Civ.P. 12(b)(6). The defendants also move for the dismissal of the state common law claims should the federal claims be dismissed.

## FACTS

For the purposes of this motion, the following allegations contained in the amended complaint are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). In 1970, Robins, a manufacturer of pharmaceutical and consumer products, began to produce and market a contraceptive device known as the Dalkon Shield. On July 23, 1973, the plaintiffs purchased 100 shares of Robins common stock. During the period between the introduction of the Shield into the market and plaintiffs' purchase of Robins common stock, Robins published favorable statements concerning the safety, efficiency and marketability of the device. The Shield, however, did not perform as anticipated, and Robins was named as defendant in several products liability actions. Also, in 1972 a report was completed which indicated that the Shield was not as safe or effective as Robins had originally advertised. This report was not published, and Robins did not attempt to modify or correct the earlier statements that had been made concerning the Shield until July, 1974.

The plaintiffs originally instituted this action on March 23, 1977. The defendants moved to dismiss that complaint on grounds similar to those asserted in this motion. That complaint was dismissed by order of this Court dated April 5, 1978 for failure to comply with the particularity requirements of Rule 9(b), among other reasons.

The essence of plaintiffs' claim is that Robins and the individual defendants knew of or recklessly disregarded unfavorable information concerning the Shield. They allegedly failed to correct or modify the original statements made by Robins concerning the Shield in breach of the duty imposed upon them by Section 10(b) and Rule 10b–5. Further, defendants allegedly made, or caused to be made, statements concerning the Shield or Robins' financial condition without also stating that problems involving the Shield had arisen or that an unpublished report indicated that the Shield may

not perform as well as originally stated. These omissions, plaintiffs contend, rendered these later statements misleading in violation of Section 10(b) and Rule 10b–5. The period during which these alleged violations occurred is from April, 1972 through July, 1974. Plaintiffs seek to represent all persons who purchased Robins securities during this period.

## DISCUSSION

The defendants have asserted several arguments in support of their motion to dismiss the amended complaint. In the discussion that follows, each of the defendants' arguments will be separately reviewed.

### Lack of Subject Matter Jurisdiction

■ The defendants contend that the amended complaint essentially states a claim for mismanagement and for injuries suffered by Robins because of the errors in judgment by the individual defendants, claims not cognizable under Section 10(b) or Rule 10b–5. Therefore, the defendants argue, the amended complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) because this Court lacks subject matter jurisdiction.

It is argued that the gravamen of the amended complaint is that there was improper marketing of a product manufactured and sold by Robins. The defendants assert that the plaintiffs' claim lacks the requisite nexus between such marketing and the purchase or sale of securities. Furthermore, defendants argue, the amended complaint alleges an injury which was suffered by the corporate defendants, not the plaintiffs and, consequently, the plaintiffs lack standing to bring suit.

The theory under which the plaintiffs seek recovery is not, however, so limited. They claim that the defendants failed to correct statements made in documents issued by Robins which were true when made but which became misleading by subsequent events. Specifically, plaintiffs claim that Robins made certain statements in its 1970 and 1971 Annual Reports and in a March, 1972 prospectus. All of these documents were issued during the period 1970 through 1972 and indicated that the Shield was a safe and effective means of contraception and that the device was becoming popular in use. However, in 1972, an unpublished research report indicated that the Shield was neither as effective nor as safe as earlier publicized studies indicated.

Plaintiffs claim that defendants knew of or recklessly disregarded these facts, and that they concealed and failed to make proper disclosure of these facts. The defendants also allegedly failed, until 1974, to disclose that Robins had been named as defendant in several products liability suits during the proposed class period. The effect of these nondisclosures coupled with the earlier Robins statements concerning the Shield, plaintiffs contend, presented a false and inflated picture of the operating and financial condition of Robins when they purchased Robins securities. Had the disclosure been made prior to plaintiffs' purchase, they say, the price of Robins securities would have been lower than that which they paid.

While the plaintiffs cannot, as shareholders, be heard to complain of injuries to the corporation merely because the value of plaintiffs' investment had been indirectly harmed by the acts of the defendant, *Gordon v. Fundamental Investors, Inc.*, 362 F.Supp. 41 (S.D.N.Y.1973), the amended complaint asserts direct injury to the plaintiffs as a result of the acts of the defendants or of their failure to act. Plaintiffs seek to recover for more than mere alleged acts of mismanagement by the defendants. Their claim is arguably within the purview of Section 10(b) unless Section 18 of the Securities Exchange Act of 1934 provides plaintiffs an exclusive remedy.

Defendants further contend: (1) that they had no duty to revise prior statements made before the proposed class period, in particular statements made in Robins' 1970 and 1971 Annual Reports and in a prospectus issued in 1972; (2) that plaintiffs' claims are too vague; and (3) that plaintiffs rely on post-purchase facts to support their claim.

■ It is now clear that there is a duty to correct or revise a prior statement which was accurate when made but which has become misleading due to subsequent events. This duty exists so long as the prior statements remain "alive". A. Jacobs, *The Impact of Rule 10b–5* § 88.04[b] at 4–14, (rev.1978) and cases cited therein. Consequently, the defendants owed a duty to plaintiffs to revise any such statements made in Robins' 1970 and 1971 annual reports and in its March, 1972 prospectus if those statements were "alive" at the time the plaintiffs purchased Robins securities. Defendants contend that these reports were ineffective once Robins issued its 1972 Annual Report. The 1972 report was allegedly issued some months prior to plaintiffs' purchase.

Both section 10(b) and Rule 10b–5 are silent as to the effect of time on the duty to correct, but logic compels the conclusion that time may render statements immaterial and end any duty to correct or revise them. In measuring the effect of time in a particular instance, the type of later information and the importance of earlier information contained in a prior statement must be considered. Thus, general financial information in a two-year old annual report may be stale and immaterial. *Shahmoon v. General Dynamics Corp.*, [1973–1974] Fed. Sec.L.Rep. (CCH) ¶ 94,308 at 95,038 (S.D.N. Y.1973). However, no general rule of time can be applied to all circumstances. Rather, a "particular duty to correct a specific prior statement exists as long as traders in the market could reasonably rely on the statement." 2 A. Bromberg, *Securities Law, Fraud*, § 6.11(543) (1977).

■ The prior statements at issue would appear to be of a nature that traders in the market might reasonably rely on them until publicly corrected. The 1970 Annual Report allegedly stated that clinical data indicated that the Shield "offers a low incidence of spontaneous expulsion, cramping and bleeding than other IUD's as well as greater protection against pregnancy. We feel it has great promise, in the international as well as domestic market . . .."

(Amended Complaint, ¶ 15). The 1971 Annual Report allegedly states that the Shield was "[o]ne of our most highly successful products during the year . . .. We are also actively developing overseas markets for the Dalkon Shield, in more than a dozen countries. The device already has been purchased for distribution abroad by the International Planned Parenthood Federation, and also by the Pathfinder Fund . . .." (Amended Complaint, ¶ 16). Finally, the 1972 prospectus generally indicates that the device was marketed in the United States and Canada and was being introduced overseas. (Amended Complaint, ¶ 17). These statements indicate that the Shield was developing a significant market appeal and arguably projected a favorable future for the Shield. The mere passage of time would not alone deter the trader in the market from relying on these statements. Such reliance does not appear to this Court to be unreasonable. The defendants therefore had a duty to correct these prior statements when they became aware of subsequent events which rendered those statements misleading.

■ As for the argument that the amended complaint should be dismissed because it relies on post-purchase facts, the amended complaint's reference to post-purchase documents are for the purpose of supporting the claim that other members of the proposed class have a valid cause of action based on defendants' failure to disclose facts in these later documents. Plaintiffs' references to post-purchase events which occurred within the proposed class period are relevant to the issue of whether these events should have been disclosed during the proposed class period but were not, and whether a violation of federal securities laws had occurred as a result of the nondisclosure. Whether or not these plaintiffs are proper class representatives of all members of the proposed class, including those who purchased Robins securities after these plaintiffs made their purchase, is an issue not presented by this motion. The Court offers no opinion as to that issue.

However, plaintiffs' references to events which occurred *after* the proposed class period are irrelevant as to these claims and must be stricken. In particular, the events referred to in paragraphs 38, 39, 40, and 41 should be deleted as irrelevant to the claims asserted in the amended complaint.

*Failure to Comply with Pleading Requirements*

■ The defendants contend that the amended complaint has not met the pleading requirements of Fed.R.Civ.P. 9(b) as to any and all of the defendants. Rule 9(b) provides that all averments of fraud or mistake must be stated with particularity. While this rule must be reconciled with Rule 8(a)(2) which requires only a short statement of the claim showing that the pleader is entitled to relief, *Denny v. Barber*, 576 F.2d 465, 467 (2d Cir. 1978), the elements of the claim must be sufficiently particularized to show fraud or to permit an inference of fraud as to the plaintiff. *Id.*

The theory underlying the amended complaint is that the defendants failed to disclose information concerning the Shield which corrects statements made in earlier publications and that subsequent publications were misleading because of that omission. Paragraph 18 of the amended complaint contends that the defendants knew or recklessly disregarded information concerning potential problems with the Shield sometime "[d]uring the [proposed] class period" from April, 1972 through July, 1974. Plaintiffs' claims arose, if at all, on July 23, 1973, the date they purchased Robins securities. The pleading is defective in that it fails to particularize the time when the defendants allegedly knew or recklessly disregarded the undisclosed information. The failure to specifically plead a time reference was a principal defect found in the original complaint in the action, and the plaintiffs have failed again to properly plead.

The time such knowledge was acquired or was recklessly disregarded is relevant in that it determines when the defendants' duty to disclose arose. *Lewis v. Black*, 74 F.R.D. 1 (E.D.N.Y.1976). A declaration that the defendants knew or recklessly disregarded this information during the class period does not suffice since the duty to disclose may have arisen *during* the class period but *after* the plaintiffs' purchase. In such an instance, plaintiffs may not have a claim and would not be proper class representatives. *Denny v. Barber*, 576 F.2d at 468–69.

Nor can the plaintiffs argue that the pleadings are sufficient because the specific time that the defendants became aware of this new information is matter peculiarly within the knowledge of the defendants and, therefore, can not be specifically pleaded. Plaintiffs must state at the very least the circumstances which lead them to believe that defendants knew or recklessly disregarded the information contained in the 1972 study prior to their own purchase of Robins common stock. *See* 5 Wright and Miller, *Federal Practice and Procedure* § 1297 at 403 (1969). Plaintiffs do not allege that the author of that study had conducted it at the instance of Robins, or had submitted it to Robins at any time, or that Robins should otherwise reasonably be expected to have been aware of its contents. The failure to include such allegations is particularly significant since the report was allegedly unpublished. Absent some allegation which supports an inference of knowledge, the Court cannot assume that the defendants were aware of the information contained in an unpublished study.

Similarly, the allegations of the amended complaint concerning the actions instituted against Robins for products liability which plaintiffs assert were not disclosed have not been sufficiently pleaded. As stated in the order of this Court dismissing the original complaint in this action, absent a statement as to when these product liability actions were instituted, it is not clear whether these plaintiffs have asserted a proper claim. These actions may have been instituted after plaintiffs' purchase. Plaintiffs would not, therefore, have been injured by the alleged nondisclosure complained of. Since the amended complaint lacks sufficient allegations which would enable this

Court to determine whether plaintiffs have a proper claim under Section 10(b), it fails to comport with the pleading requirements of Rule 9(b).

*Exclusivity of Section 18*

■ The defendants' final objection to the amended complaint is that while plaintiffs seek recovery for violation of § 10(b) of the Securities Exchange Act of 1934, the amended complaint, in part, alleges facts which would support claims under Section 18 of the Act. Since Section 18 provides the exclusive remedy available to private plaintiffs for acts or omissions which may be within the purview of that section, these plaintiffs cannot assert claims under Section 10(b) which are based on such acts or omission. The plaintiffs argue that no such exclusivity of § 18 exists. Rather, they contend, concurrent claims under § 10(b) and § 18 may be asserted.

A comparison of Section 10(b)[1] and Rule 10b–5[2] with Section 18[3] reveals several significant differences. Section 10(b) and Rule 10b–5 were designed to regulate a broad range of conduct. *Heit v. Weitzen*, 402 F.2d 909 (2d Cir. 1968), *cert. denied*, 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969). Rule 10b–5 imposes liability upon anyone who makes an untrue statement of a material fact or omits to state a material fact in connection with the purchase or sale of any security. Section 18, in contrast, has a more limited scope and specifically limits liability thereunder to persons who make or cause to be made false or misleading statements in any application, report or document filed under the Securities Act of 1934 or rule promulgated thereunder. Thus, for example, whereas a claim may be asserted

1. Section 10(b), 15 U.S.C. § 78j (1970) provides in pertinent part:

   "§ 78j. Manipulative and deceptive devices "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
   "(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

2. Rule 10b–5, 17 C.F.R. § 240.10b–5 promulgated pursuant to Section 10(b) provides:

   "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any national securities exchange,
   "(1) To employ any device, scheme, or artifice to defraud,
   "(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
   "(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

3. Section 18, 15 U.S.C. § 78r (1970) provides:

   "(a) Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this chapter or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading. A person seeking to enforce such liability may sue at law or in equity in any court of competent jurisdiction. In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant.
   "(b) Every person who becomes liable to make payment under this section may recover contribution as in cases of contract from any person who, if joined in the original suit, would have been liable to make the same payment.
   "(c) No action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued."

under Section 10(b) and Rule 10b–5 for statements made in a press release, e. g., *SEC v. Texas Gulf Sulfur Co.*, 401 F.2d 833 (2d Cir. 1968) (en banc), *cert. denied sub nom., Kline v. SEC*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), such a claim could not be asserted under Section 18 since it does not involve a document filed with the SEC as prescribed by the Act.

A second distinction is that, in cases based on nondisclosure, there is a presumption of reliance by the plaintiff under Section 10(b) once the omitted fact is shown to have been material. *Affiliated Ute Citizens v. U. S.*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Section 18, however, expressly requires actual knowledge of and reliance upon the misstatements in any document filed with the SEC. 15 U.S.C. § 78r(a) (1970); *Heit v. Weitzen*, 402 F.2d 909, 916 (2d Cir. 1968), *cert. denied*, 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969) ("reliance on the actual 10K report is an essential prerequisite for a § 18 action and constructive reliance is not sufficient.")

A third notable difference between § 18 and § 10(b) is that the former provides for a three-year statute of limitations coupled with a one-year discovery rule, 15 U.S.C. § 78r(a), while Section 10(b) does not specify a statute of limitations. Under the latter, federal courts must refer to the appropriate limitation under the laws of the forum state. The court will apply the statute of limitations under either state securities laws or state fraud laws.

Finally, Section 18 permits the assessment of an undertaking for the payment of costs of the action. Section 10(b) does not provide for a comparable undertaking.

In resolving the question of whether circumstances which support a claim under Section 18 may also support a claim under Section 10(b), the Court must consider these differences and the roles of each of these

sections as designed by Congress. If these sections can reasonably be said to provide mutually exclusive remedies, then events which are actionable under Section 18 will not provide an implicit claim under Section 10(b).

The Supreme Court has indicated that in determining whether an implicit private cause of action may be found, federal courts must consider several factors. Among these factors,[4] the court must consider whether it would be consistent with the underlying purpose of the legislative scheme to imply a private remedy and whether there is any indication of legislative intent. *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Redington v. Touche Ross & Co.*, 592 F.2d 617 (2d Cir. 1978), *cert. granted*, —— U.S. ——, 99 S.Ct. 563, 58 L.Ed.2d 649 (1978). A private cause of action should not be implied under the anti-fraud provisions of the Securities Exchange Act when fulfillment of Congress' purposes may be achieved without it. *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 41, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977).

Few cases have addressed the issue of whether an implied private cause of action exists under Section 10(b) where Section 18 provides a remedy. In *Kulchok v. Government Employees Insurance Co.*, [1977–1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,002 (D.D.C.1977), the district court found that Section 18 provides an exclusive private remedy. However, that court did not evaluate this issue under the criteria set forth in *Cort v. Ash*, and *Piper v. Chris-Craft Industries, Inc.* Similarly, in *Berman v. Richford Industries, Inc.* [Current] Fed. Sec.L.Rep. (CCH) ¶ 96,518 at 94,013 (S.D.N. Y.1978) the court stated that Section 18 "provides the exclusive remedy for misrepresentations set forth in documents filed with the [SEC]." (Citations omitted). Again, however, this conclusion was

---

4. The factors set forth in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) are:
(1) Whether plaintiffs belong to the class for whose special benefit the statute was enacted.
(2) Whether there is any indication of legislative intent on the issue.

(3) Whether implication of a right of action is consistent with the policies behind the legislative scheme.
(4) Whether the cause of action is one traditionally relegated to state law.

reached without an analysis of the legislative scheme embodied in the Act.

Those cases which have reached the conclusion that Section 18 does not provide the exclusive remedy have also relied on authorities other than a legislative analysis to support their positions. In *Seiden v. Nicholson*, 69 F.R.D. 681 (N.D.Ill.1976) and *In re U. S. Financial Securities Litigation*, 74 F.R.D. 497 (S.D.Cal.1977) the court reached the conclusion that the remedies available under the Act were cumulative and not exclusive on the basis of the doctrine of stare decisis.

A review of the legislative scheme embodied in the 1934 Act indicates that Congress intended that the various sections of the Act would provide a coherent system for remedying and controlling acts of securities fraud. Note, *Section 18 of the Securities Exchange Act of 1934: Putting the Bite Back into the Toothless Tiger*, 47 Fordham L.Rev. 115, 123 (1978). As part of that system, Section 18 was purposely designed to provide a private remedy for false and misleading statements in reports filed with the SEC. The substantive and procedural requirements contained therein implicitly indicate that Congress intended this section to be the primary vehicle for remedying the unlawful acts it proscribes.

For example, Section 18 contains specific prerequisites which must be satisfied before a claim may be asserted. It further provides for a defense of good faith and lack of knowledge and for the assessment of an undertaking. These strict express provisions contrast sharply with the general provisions of Section 10(b), as noted earlier in this opinion.

Section 10(b) was designed as a "catch-all" provision to prevent the use of those manipulative devices not already proscribed by other provisions of the Act. In testimony before the House Committee on Interstate and Foreign Commerce, J. M. Landis, a Commissioner of the Federal Trade Commission and a draftsman of the Act, stated that the original proposed statute upon which Section 10(b) was based "gives the general power to the Commission to prescribe the rules and regulations governing *any other manipulative devices.*" Hearings on Stock Exchange Regulations Before the House Committee on Interstate and Foreign Commerce, 73d Cong., 2d Sess. 21 (1934) (emphasis added). Other testimony by Thomas G. Corcoran, a principal spokesman for the FTC, stated that the proposed statute was a "catch-all clause to prevent manipulative devices . . . .. The Commission should have the authority to deal with *new manipulative devices.*" *Id.* at 115 (emphasis added). These statements support the conclusion that Section 10(b) was not intended to provide a cumulative remedy additional to those expressly provided, but rather was intended to prevent the use of manipulative devices not specifically enumerated in the Act. Therefore, the effect of permitting an implicit private claim under Section 10(b) when Section 18 already provides a remedy would be to undermine the intent of Congress as manifested in Section 18 itself. Further, Congress' purposes in enacting the 1934 Act may be achieved, in this instance, without such a finding of an implied right since Section 18 already provides a remedy for those claiming to be aggrieved.

Nor is this an action similar to that of *Redington v. Touche Ross & Co.*, 592 F.2d 617 (2d Cir. 1978), *cert. granted*, —— U.S. ——, 99 S.Ct. 563, 58 L.Ed.2d 649 (1978) wherein the Court of Appeals held that there was an implied cause of action under Section 17 of the Act and reversed the district court's ruling that Section 18 provided plaintiffs an exclusive remedy. The appellate court held that Section 18 did not provide the exclusive remedy available to customers of a brokerage firm against an accountant whose audits of that firm were false or misleading. The Court reasoned that since misstatements in a Section 17 report would not affect the price of shares of the various issuers which were in the hands of the broker's customers, a strict application of the provisions of Section 18 would leave those customers without a remedy. However, the court held that the provisions of Section 18 would apply to all

investors who seek relief as *investors* thereby apparently limiting the applicability of its holding.

This apparent limitation of its holding may be interpreted as suggesting that *shareholders* who seek relief from *insurers* for acts of the issuer which would support a claim under Section 18 must pursue an action under that section and may not seek relief under Section 17. Similarly, since the shareholder plaintiffs in this action have alleged facts which would appear to support an action under Section 18 against Robins—assuming that they could satisfy the prerequisites thereof—*Redington* offers no support for their position that they have an implied private claim under Section 10(b). Moreover, the circumstances which compelled the court in *Redington* to find an implied cause of action under Section 17 are not present in this action. More specifically, in *Redington* the plaintiffs could not secure relief from the acts complained of under Section 18, whereas here the plaintiffs have asserted allegations which appear to support a claim for which relief could be granted under Section 18, if the conditions of that section are otherwise met. Accordingly, insofar as the amended complaint alleges omissions and misleading statements in documents filed with the SEC which allegations appear to support a cause of action under Section 18, the motion to dismiss is granted.

*CONCLUSION*

1. Plaintiffs have generally stated a claim cognizable under Section 10(b) and Rule 10b–5 with respect to statements made in Robins' 1970 and 1971 Annual Reports and March, 1972 prospectus which were not modified or corrected, and with respect to the alleged nondisclosures in documents or publications which were issued by Robins but not filed with the SEC. However, they have failed to plead their claims with the particularity required by Fed.R.Civ.P. 9(b). This defect was the basis of this Court's dismissal of the original complaint filed in this action. (See Opinion and Order of this Court dated April 5, 1978 at p.

13). As these defendants have previously been granted the opportunity to remedy this defect and have failed to do so, the amended complaint is dismissed as to this portion of plaintiffs' claims without leave to replead.

2. Those claims relating to documents filed with the SEC during the proposed class period must be dismissed as being improperly asserted under Section 10(b) and Rule 10b–5.

3. Since plaintiffs' claims under federal securities laws have been dismissed, the pendent state claims asserted in this action are dismissed without prejudice. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The Clerk of the Court is hereby ordered to enter judgment in accordance with this Opinion and Order.

SO ORDERED.