**Alvin J. IVERS, Trustee of the Alvin J. Ivers, P.C. Pension Trust, Erik Ballan, William Steiner, Lee Bloom and Violet Klein, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**KEENE CORPORATION and Glenn W. Bailey, Defendants.**

**No. 91 Civ. 2140 (WCC).**

United States District Court, S.D. New York.

Dec. 18, 1991.

---

Lowey Dannenberg Bemporad & Selinger, P.C., Atty., New York City, (Richard Bemporad, of counsel), for plaintiffs.

Shereff, Friedman, Hoffman & Goodman, New York City (Robert J. Jossen, John A. Coleman, Jr., of counsel), for defendant Keene Corp.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

This class action is brought by plaintiffs on behalf of all those who purchased common stock of the Bairnco Corporation ("Bairnco") between March 13, 1989 and April 2, 1990. The Amended Class Action Complaint (hereinafter "Complaint") alleges violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b–5 promulgated thereunder.

This action is currently before the Court on defendants' motion to dismiss the Complaint pursuant to Rules 9(b) and 12(b)(6) of the Fed.R.Civ.P.

## BACKGROUND

In the Complaint, plaintiffs allege that defendant Keene Corporation ("Keene"), a wholly owned subsidiary of Bairnco at all times relevant to this action, and defendant Glenn W. Bailey, the chief executive officer of Keene and Bairnco, caused Bairnco to disseminate in its publicly issued statements materially false and misleading information concerning Keene's financial condition which operated artificially to inflate the market price of Bairnco common stock. In particular, plaintiffs allege that defendants represented, without a reason-

able basis, that then present and reasonably foreseeable claims for asbestos-related damages and the cost of defense against such claims would not have a materially adverse effect on the financial condition of Keene and of Bairnco.

Central to plaintiffs' claim is the following excerpt from Bairnco's 1988 Annual Report:

> Keene's management and its counsel believe that the disposition of the existing and possible unasserted asbestos claims and other cases will not have a material adverse effect on Keene. Accordingly, management of the corporation [Bairnco] believes that the disposition of such claims, along with various other lawsuits, will not have a material adverse effect on the consolidated financial position of the corporation.

Complaint ¶ 42(a). The Annual Report went on to explain that this conclusion was premised on five factors:

> (1) Keene's insurance coverage; (2) Keene's experience to date with asbestos cases and their settlement, including Keene's review of the trends with respect to new case filings; (3) the benefit derived from the cooperation of co-defendants ... (4) the potential reduction of Keene's share of indemnity as Manville and possibly other responsible parties, such as the U.S. Government, pay a share of liability contribution to asbestos case costs and (5) the book accrual established by Keene....

Complaint ¶ 42(b)).

These statements, which plaintiffs allege to be false and misleading, were consistently repeated in Bairnco's annual and quarterly reports to the public during the class period, plaintiffs contend.

On January 23, 1990, defendants announced a restructuring of Bairnco in which Keene would be "spun off" and shares of its stock distributed to Bairnco shareholders in proportion to their Bairnco holdings.

In a press release issued on March 28, 1990, Bairnco reversed its prior assurances regarding the asbestos claim risks. The release stated that the management of

Keene could not determine whether or not Keene's ultimate liability on asbestos claims would have a "material adverse effect upon Keene's financial position." Complaint ¶ 54. In the five business days following the press release, the per-share price of Bairnco common stock fell more than 50% in value, from $13.625 to $6.25.

In its 1989 10–K report, filed on or about April 2, 1990, Bairnco disclosed that "substantially all of Keene's remaining insurance coverage" was subject to litigation or dispute and would not be available until after such insurance litigation or disputes and other issues were resolved.

## DISCUSSION

### I. Applicable Legal Standard

In considering a motion to dismiss for failure to state a claim, the court "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In order to prevail on a motion to dismiss, the moving party must demonstrate "beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). A court must accept as true the factual allegations accompanying the complaint and draw all reasonable inferences in favor of the non-moving party. *See Cosmas v. Hassett*, 886 F.2d 8, 12 (2d Cir.1989).

In the instant case plaintiffs offer three separate theories of Keene's liability under Section 10(b) and Rule 10b–5. Plaintiffs claim: (1) that Keene is "primarily liable" for the misstatements issued by Bairnco concerning Keene; (2) that Keene is liable

for failing to correct Bairnco's Material Misrepresentations; and (3) that Keene is liable as an aider and abettor. The Court considers these theories individually below.

## II. Keene's Liability Under Section 10(b)

### A. *Primary Liability*

█ Plaintiffs argue that Keene, as a subsidiary of Bairnco, cannot escape primary liability for the alleged misstatements issued by Bairnco about Keene. Relying upon *SEC v. Texas Gulf Sulphur*, 401 F.2d 833, 862 (2d Cir.1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), plaintiffs advance the unchallengable proposition that once a person or entity voluntarily chooses to make a statement which is "reasonably calculated to influence the investing public," the speaker has a duty to disclose sufficient information so that the statement made is not "false and misleading or . . . so incomplete as to mislead." Plaintiffs argue that during the class period, when Keene was a subsidiary of Bairnco, Keene was responsible for providing Bairnco with details of its performance so as to enable Bairnco accurately to assess and publicly report on Bairnco's financial condition. Complaint ¶¶ 8, 66, 67; Op. Mem. at 24. Plaintiffs thus conclude that because Keene was aware of its true financial condition and knew that its allegedly false and misleading statements would be publicly disseminated by Bairnco and Bailey, Keene should be held liable under *Texas Gulf Sulphur* for knowingly disseminating false and misleading information that was reasonably calculated to influence the investing public.

By contrast, defendants maintain that plaintiffs' novel theory fails to state a claim. Specifically, defendants assert that Keene, as a wholly owned subsidiary of Bairnco, owed no duty to the shareholders of Bairnco to disclose any information. It was Bairnco, not Keene that made the statements in issue here and only Bairnco owed a duty to its shareholders. Defendants remark further that a duty to speak does not find its source in the securities laws but instead must come from a fiduciary relationship between the parties. *See*

*Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1125 (7th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991). And plaintiffs, who were purchasers of Bairnco's stock, allege no "fiduciary relation" with Keene.

Thus defendants conclude that since a 10b–5 complaint must include an allegation of the basis of the defendant's duty toward the plaintiff, *see Chiarella v. United States*, 445 U.S. 222, 228–29, 100 S.Ct. 1108, 1114–15, 63 L.Ed.2d 348 (1980) (citing *Frigitemp Corp. v. Financial Dynamics Fund*, 524 F.2d 275, 282 (2d Cir.1975)), and since no such allegation can be found here, the Complaint must be dismissed insofar as it alleges defendants' primary liability under Section 10(b). The Court agrees. Plaintiffs' apparent attempt to derive this duty from *Texas Gulf Sulphur* is misplaced. In that case, the statements in issue were made to the public by the corporation whose securities were traded. Here Keene made no relevant statements to the investing public and had no publicly traded shares during the class period. Plaintiffs' attempt to derive such a duty from *In re Par Pharmaceutical, Inc. Sec. Litig.*, 733 F.Supp. 668 (S.D.N.Y.1990), is similarly unavailing. *Par Pharmaceutical*, as cited by plaintiffs, held only that the complaint in question was sufficient to withstand the heightened scienter requirements that apply to an aiding and abetting claim under the securities laws in the absence of a duty to disclose. *See id.* at 681. *Par Pharmaceutical* by no means stands for the proposition that a subsidiary company owes a duty to the shareholders of its parent for statements issued by the parent. Thus, plaintiffs' primary liability theory fails.

### B. *Failure to Correct Material Misrepresentations*

Closely related to plaintiffs' primary liability theory is plaintiffs second theory: that Keene can be held liable not only for alleged false statements but also for its alleged failure to correct the false statements made by Bairnco about Keene. Because this theory would also require a duty towards Bairnco's shareholders on the part

of Keene and because plaintiffs, for reasons noted in the previous section, have failed to prove the existence of any such duty on the part of Keene, plaintiffs cannot proceed under a theory of Keene's failure to correct Bairnco's alleged misrepresentations.

### C. Aider and Abettor Liability

In addition to primary liability and liability for failure to correct material misrepresentations, plaintiffs have also alleged defendants' liability under Section 10(b) as an aider and abettor. In order to establish liability on this theory, plaintiffs must prove three elements: (1) the existence of a primary violation by someone other than the alleged aider and abettor; (2) knowledge of and specific intent to promote this violation; and (3) "substantial assistance" in the achievement of the primary violation.[1] *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 62 (2d Cir.1985); *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983); *ITT, an Int'l Inv. Trust v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980).

#### 1. Primary Violation

Defendants argue that plaintiffs cannot prove any of these elements. The bulk of their argument, however, focuses on countering plaintiffs' allegations of a primary violation on the part of Bairnco. Specifically, defendants argue that the Complaint does little more than plead "fraud by hindsight."

In *Denny v. Barber,* 576 F.2d 465, 470 (2d Cir.1978), Judge Friendly set forth a useful articulation of the rule:

> [T]he complaint is an example of alleging fraud by hindsight. For the most part, plaintiff has simply seized upon disclosures made in later annual reports and alleged that they should have been made in earlier ones.... Nowhere does the complaint alleged with the required particularity transactions about which defendants in fact had such perceptions or were reckless in not having them when the 1973 and early 1974 reports were issued....

Defendants argue strenuously that plaintiffs have alleged no more in their Complaint than the Complaint in *Denny.* Plaintiffs disagree, noting that in *Denny,* the district court found that the Complaint " 'merely recited neutral facts which are irrelevant to the claims they embellish, and which do not permit an inference of wrongdoing.' " 576 F.2d at 468 (quoting the district court's findings of fact).

Distinguishing *Denny,* plaintiffs in the instant case urge that their Complaint alleges specific facts which were known to Keene and which Keene concealed until the close of the class period. In particular, plaintiffs argue that they have alleged defendants' failure to disclose its true financial condition and asbestos-related liability during the class period with respect, *inter alia,* to defendants' inadequate insurance coverage. The Court agrees. In the Complaint, plaintiffs allege that while Bairnco represented in its 1988 10–K report that approximately $234 million of insurance coverage was remaining and available for asbestos cases as of December 31, 1988, defendants failed to disclose that some $143 million of this amount was in dispute or the subject of litigation. Complaint ¶ 30(b); Op.Mem. at 7. In addition, the Complaint charges that while Bairnco noted that an additional $30 million in coverage was uncertain because it was owed to Keene by insolvent insurance companies, defendants failed to disclose that these in-

---

1. Relying on *Ross v. Bolton,* 904 F.2d 819 (2d Cir.1990), defendants argue that, as with plaintiffs other two theories, plaintiffs cannot proceed under an aider and abettor theory without alleging a fiduciary duty running from Keene to Bairnco shareholders. Specifically, defendants charge that if only recklessness is alleged, a fiduciary duty to the plaintiff on the part of the alleged aider and abettor is required before liability may attach. Here, according to defendants, plaintiffs have alleged recklessness without alleging fiduciary duty and therefore cannot proceed under a theory of aiding and abetting.

Defendants' assertions are, however, unavailing. The Complaint alleges actual intent not merely recklessness on the part of Keene. Complaint ¶¶ 66, 67. Thus *Ross,* which held a duty must be shown if plaintiff seeks to prove "substantial assistance" based on the recklessness of the aider and abettor, rather than actual intent, does not apply. *See* 904 F.2d at 824.

solvencies imperiled an additional $23 million in coverage. Complaint ¶ 47; Op.Mem. at 7–8. Taking these allegations of the Complaint to be true,[2] as the Court must on the instant motion, the Complaint, at the very least, states the existence of a primary violation by Bairnco.

### 2. Specific Intent

Keene's knowledge of and specific intent to further this primary violation is clearly alleged in paragraph 66(b) of the Complaint. Rule 9(b) itself provides that "malice, intent, knowledge and other conditions of mind of a person may be averred generally." The facts alleged in the Complaint suffice to meet the standard of Rule 9(b) since they give rise to a strong inference that Keene had knowledge that the statements made by Bairnco respecting the financial condition and asbestos-related liability of Keene were false or misleadingly incomplete. Although it is not clear how the subsidiary, Keene, would benefit from an increase in the market price of its parent's stock, there is no requirement that the Complaint identify any motive for the aider/abettor to assist in the fraud, *see Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir. 1989).

### 3. Substantial Assistance

There is also little doubt that the Complaint does set forth the substantial assistance provided by Keene in furtherance of the primary violation. According to the Complaint, Keene provided this substantial assistance both by supplying the materially false and misleading materials and information to Bairnco for public dissemination, and in covering up the fraud by failing to correct the false and misleading statements. Complaint ¶¶ 67–69.

Defendants argue, however, that plaintiffs' allegations of fraud are insufficient to meet the requirements of Rule 9(b). Specifically, defendants note that in this Circuit fraud allegations ought to specify the time, place, speaker, and content of the

alleged misrepresentations, *see Di Vittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987), and since plaintiffs do not achieve this standard of specificity with respect to Keene's alleged statements, rule 9(b) has not been satisfied.

■ The Court does not agree. Allegations of fraud may be based on information and belief "when facts are peculiarly within the opposing party's knowledge" and the Complaint sets forth specific facts supporting a strong inference of fraud. *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Somerville v. Major Exploration, Inc.,* 576 F.Supp. 902, 909 (S.D.N.Y.1983). Here the Complaint sets forth sufficiently specific details to apprise defendants of the nature of the claim against them and to permit them to prepare their defense. Although the Complaint does not specify exactly where and how the alleged misrepresentations were made, this information is obtainable through interrogatories or depositions. Under the circumstances of this case, where the information needed relates essentially to the internal workings of Keene and Bairnco, a rigid application of Rule 9(b) would be particularly inappropriate. *See Schlick,* 507 F.2d at 379. Moreover, where, as here, the assistance consists in part in failing to correct misstatements— that is, in a continuing silence—there were no communications which could be identified as to time, place, speaker or content.

### CONCLUSION

For the above stated reasons, defendants' motion to dismiss is granted insofar as concerns the claims of primary liability and failure to correct material misstatements and denied insofar as concerns the claim of aider and abettor liability.

SO ORDERED.

---

**2.** Defendants vigorously dispute plaintiffs' contentions as to the alleged $143 million in dispute, noting that plaintiffs do not reveal the source of their information and at times appear to substitute a $146 million figure for the $143 figure. Because this Court must take as true plaintiffs' factual allegations for purposes of this motion, defendants' contentions would be more appropriate in the context of a motion for summary judgment.