**Leonard S. SCHWARTZ, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**NOVO INDUSTRI, A/S, Defendant.**

**No. 85 Civ. 5500 (EW).**

United States District Court, S.D. New York.

June 16, 1986.

Abbey & Ellis, New York City, for plaintiff; Arthur N. Abbey, of counsel.

Rosenman, Colin, Freund, Lewis & Cohen, New York City, for defendant; J. Kelley Nevling, Jr. and Peter Shapiro, of counsel.

OPINION

EDWARD WEINFELD, District Judge.

Plaintiff commenced this action under § 10(b) of the Securities Exchange Act of 1934,[1] and Securities Exchange Commission ("SEC") Rule 10b–5 adopted pursuant thereto,[2] alleging fraudulent misrepresentations in the sale of securities. Defendant Novo Industri ("Novo") is a Danish company which manufactures enzymes for industrial use, as well as products for use in the treatment of diabetes. Novo's common stock is registered with the SEC and is traded in exchanges in the United States in the form of American Depository Shares ("ADS"). Novo's ADSs are traded on the New York Stock Exchange; according to the plaintiff more than 49% of Novo's common stock is currently held by the American purchasers of these ADSs.

---

**11.** *Primoff v. Duell,* 85 Misc.2d 1047, 381 N.Y. S.2d 947, 950 (N.Y.Co.1976).

**1.** 15 U.S.C. § 78j(b).

**2.** 17 C.F.R. 240.10b–5 (1985).

Plaintiff purchased 60 ADSs of Novo stock on August 3, 1984, corresponding to ownership of twelve shares of Novo's class B common. He alleges that, "on or before July 1, 1984," Novo engaged in misrepresentations "designed to and/or having the effect of artificially maintaining the price of Novo stock at levels higher than would have prevailed but for the conduct of defendant." [3] The misrepresentations alleged by plaintiff concern Novo's projections as to the effect on its business which would likely result from the decision of a large American customer for industrial enzymes, Archer Daniels-Midland ("ADM"), to manufacture in-house the enzymes it required, and which it had previously purchased from Novo. Defendant contends that plaintiff's allegations of fraud have not been pled with the particularity required by Fed.R.Civ.P. 9(b), and moves to dismiss the complaint on that ground, and for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

Plaintiff's claim of fraud centers about statements made by Novo between the issuance of the corporation's 1983 Annual Report in April 1984, and his purchase of Novo ADSs on August 3, 1984.[4] In its Annual Report for 1983, Novo stated that

> Sales of Novo enzymes to the starch industry for the production of fuel alcohol and HFCS [High Fructose Corn Syrup, a sweetener] also increased but at a lower rate than total enzyme sales, primarily because a major enzyme user began in-house production of certain enzymes during the second half of 1983. The increase in the quantity of enzymes sold to the starch industry reflects a continual growth in the usage of HFCS

as a substitute for sugar, especially in soft drinks.[5]

On July 3, 1984, Novo filed with the Securities and Exchange Commission a 20-F report which plaintiff claims was false and misleading. The complaint characterizes the report as stating that "Novo anticipated no material effect on its earnings from the in-house production of enzymes by its largest U.S. Customer." [6] On August 23, three weeks after plaintiff's purchase, Novo announced its earnings for the first half of 1984, which, according to the complaint, while "up from the 1983 comparable period, ... were below the publicly stated projections by Novo." The following day, on August 24, Novo issued a press release "which projected that Novo's fiscal year earnings would be up by 20% from the prior year, notwithstanding the disappointing results of the third quarter." [7] Plaintiff alleges that these statements "as well as all other publicly disseminated documents including 6-K reports, 20-F annual reports, and press releases filed with the Securities and Exchange Commission, were false and misleading" because "defendant either knew that the effect of ADM's in-house production of enzymes would be material to Novo and would end Novo's sales to ADM, or defendant was reckless in publishing the statements because they [sic] had insufficient information available to support such statements or had information available which indicated that the statements were false."[8]

The essence of plaintiff's claim is that the defendant fraudulently concealed in its 20-F report of July 3, 1984, the materially adverse effect on its earnings which it knew, or should have known, would result from ADM's in-house manufacture of en-

---

3. Complaint ¶ 11.

4. Plaintiff also places substantial reliance on Novo's earnings report of August 23 and an accompanying press release issued on August 24, 1984. Our Court of Appeals has unequivocally held that a plaintiff's § 10(b) complaint "must be dismissed if it did not adequately allege the issuance of fraudulent misleading statements prior to his purchase." *Denny v. Barber,* 576 F.2d 465, 468 (2d Cir.1978). Accordingly, plaintiff's contentions regarding the August 23

earnings report and the August 24 press release are not relevant to the disposition of this motion.

5. Complaint ¶ 9, at 6-7.

6. Complaint ¶ 13.

7. Complaint ¶ 14-15.

8. Complaint ¶ 17.

zymes. Plaintiff further alleges that the earnings report of August 23 and the press release of August 24, 1984, were part of a continuing fraudulent scheme to mislead potential investors.

It is well-settled that the requirement of Rule 9(b) that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity" applies to actions under § 10(b).[9] As this Court has previously noted, the decisions on this subject by our Court of Appeals establish that "to satisfy the rule, plaintiff's complaint must allege (1) specific facts; (2) sources that support the alleged specific facts; and (3) a basis from which an inference of fraud may fairly be drawn." [10]

Plaintiff's paraphrase of Novo's 20–F report, which was not annexed to the complaint, is the only specific fraudulent statement alleged by the plaintiff to have been issued by Novo before his purchase of Novo stock on August 3. Accepting plaintiff's characterization of the report as stating that "Novo anticipated no material effect on its earnings from the in-house production of enzymes by its largest U.S. Customer," the situation as it stood on August 3, when plaintiff purchased his stock, was that Novo had disclosed in its Annual Report that ADM, a large customer, was undertaking in-house production, and had stated in its 20–F filing that Novo's management believed this development would not have an adverse effect on earnings. Plaintiff has not identified any sources which support the allegation that the statements in the 20–F were false; in particular, he has not alleged in the complaint that the decline in enzyme sales to ADM had any material adverse effect on Novo's earnings.

Moreover, plaintiff has not alleged any basis for an inference of fraud arising from the July 3 report. Prior to July 3, 1984, in its April Annual Report, Novo had disclosed the fact that ADM would produce enzymes in-house; plaintiff has alleged no specific facts tending to show that Novo's statements in the 20–F and other documents in the summer of 1984 were anything other than business projections or expressions of opinion based upon information previously provided to its investors.[11] This case is therefore distinguishable from *Goldman v. Belden*,[12] relied upon by plaintiff, in which the complaint alleged that the defendant's officers had issued optimistic statements about the future performance of the defendant corporation, while at the same time selling large blocks of their holdings of the corporation's stock. This latter element in the *Goldman* complaint's allegations provided factual support for the inference that defendants there were making false statements with knowledge of their falsity, intending thereby to induce reliance in potential buyers of their own stock.

In its failure to provide any basis for an inference of wrongdoing, the present complaint is an "example of alleging fraud by hindsight," which does not meet the requirements of Rule 9(b).[13] Dismissal is therefore appropriate, for as our Court of Appeals has said:

> Rule 9(b) will have failed in its purpose if conclusory generalizations such as these will permit a plaintiff to set off on a long and expensive discovery process in the hope of uncovering some sort of wrong-

---

9. *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 115 (2d Cir.1982); *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557–59 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

10. *Crystal v. Foy,* 562 F.Supp. 422, 425 (S.D.N.Y. 1983); *see Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 114, 115 (2d Cir.1982); *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557–59 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Denny v. Barber,* 576 F.2d 465, 468–69 (2d Cir.1978); *Hahn v. Breed,* 587 F.Supp. 1369, 1380 (S.D.N.Y.1984).

11. *See Hahn v. Breed,* 587 F.Supp. 1369, 1379–80 (S.D.N.Y.1984).

12. 754 F.2d 1059 (2d Cir.1985).

13. *Denny v. Barber,* 576 F.2d 465 (2d Cir.1978).

doing or of obtaining a substantial settlement.[14]

Accordingly, the motion to dismiss the complaint pursuant to Fed.R.Civ.P. 9(b) is granted. Plaintiff's request for leave to replead is granted. Any amended complaint is to be served no later than twenty days from date.

So ordered.

---

**14.** *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d   111, 116 (2d Cir.1982).