**Leonard S. SCHWARTZ, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**NOVO INDUSTRI, A/S, Defendant.**

**No. 85 Civ. 5500 (EW).**

United States District Court,
S.D. New York.

April 24, 1987.

Abbey & Ellis, New York City, for Leonard S. Schwartz; Stephen T. Rodd, of counsel.

Rosenman & Colin, New York City, for Novo Industri, A/S; J. Kelly Nevling, Jr., Peter Shapiro, of counsel.

EDWARD WEINFELD, District Judge.

After plaintiff's original complaint was dismissed for failure to comply with Fed.R. Civ.P. 9(b),[1] he served an Amended and Supplemental Complaint, which defendant now moves to dismiss. The motion is made pursuant to Fed.R.Civ.P. 12(b)(6) for failure

**1.** See *Schwartz v. Novo Industries, A/S,* 635 F.Supp. 1463 (S.D.N.Y.1986), familiarity with which is assumed.

to state a claim upon which relief can be granted and Fed.R.Civ.P. 9(b) for failure to state with particularity the circumstances comprising the alleged fraud. Alternatively, defendant moves for summary judgment pursuant to Fed.R.Civ.P. 56.

## FACTUAL BACKGROUND

Plaintiff purchased 60 American Depository shares ("ADS") of defendant Novo Industri, A/S ("Novo") on August 3, 1984. When the price of the shares declined, plaintiff brought this action pursuant to § 10(b) of the Securities Exchange Act of 1934,[2] and Securities Exchange Commission ("SEC") Rule 10b–5,[3] alleging fraudulent misrepresentation and material omissions in the sale of securities.

Plaintiff's amended complaint includes six allegedly false and misleading misstatements or omissions to state material facts by which he argues defendant Novo Industri A/S ("Novo") gave a fraudulently rosy outlook on its future earnings for the purpose of maintaining its reputation within the market as a growth company. These are as follows:

1. A statement in Novo's 1983 Form 20–F, filed with the SEC on July 3, 1984, that Novo did not feel that in-house enzyme manufacture by Archer-Daniels Midland ("ADM"), a major enzyme customer, would "have a material adverse impact on the financial position of the company or the results of its operations."

2. Another statement in the 1983 Form 20–F, to the effect that Novo's pharmaceutical division sales increased by 28% in 1983 and 35% in 1982, because of increased insulin sales of 20% and 40% in those two years.

3. A statement attributed to Mads Ovilsen, Novo's president, predicting that his company "would grow" 20% to 25% annually during the next five years, which appeared in the Wall Street Journal on November 15, 1983.[4]

4. An August 23, 1984 press release reporting Novo's revenues and earnings for the first six months of 1984 and predicting improvement in sales and earnings for the second half of 1984.

5. An August 24, 1984 press release stating that Novo "expected full-year sales to increase by 20% over 1983."

6. A September 26, 1984 statement in Novo's SEC Form 6–K that "current indications are that the development of sales and earnings during the second half of the year will improve in comparison with the first half."

In support of his contention that these statements were fraudulent, plaintiff provides excerpts from Novo's October 19, 1984 SEC Form 6–K. The Form 6–K report stated that Novo's performance was not up to par with the company's projections, and explained that it had assumed in its projections that it would receive approval from the Food and Drug Administration ("FDA") for a new line of insulin products, but such approval had not been forthcoming. Also, Novo stated that it learned one of its major enzyme customers was forming its own in-house enzyme manufacturing unit, and that the customer "has been able faster than anticipated to develop or acquire the necessary production technology to meet his own enzyme needs...."[5] Finally, Novo stated that "[i]n retrospect we may blame ourselves for not looking at the data we had on hand sufficiently critically."[6]

Novo's 1984 Annual Report, dated March 1985, reported an increase in sales from the first half of the year to the second. However, total earnings for 1984 were Danish Kroner ("Dkr.") 685 million, somewhat less

---

**2.** 15 U.S.C. § 78j(b).

**3.** 17 C.F.R. 240.10b–5.

**4.** In support of its summary judgment motion, defendant has provided the Court with the actual text of the article, which is that Mr. Ovilsen predicted that "his company's greater agility should help it grow 20% to 25% annually during

the next five years." The statement was not reported as a direct quote from Mr. Ovilsen, but as the reporter's interpretation of Mr. Ovilsen's remarks.

**5.** Amended Complaint, at para. 21.

**6.** *Id.*

than the 1983 figure of Dkr. 704 million. Novo attributed this earnings decrease to increased competition, the delay in FDA approval for its new products, and that distributors in the United Kingdom had built up large insulin inventories during 1983 in preparation for a changeover from U–40 and U–80 insulin to U–100 insulin.

## DISCUSSION

The crux of plaintiff's argument is that Novo was reckless in failing to project more accurately its earnings given the information available. The six allegedly fraudulent statements will be discussed under this framework.

### A. *The Statements in the 1983 Form 20–F*

■ The first statement plaintiff relies on to state a claim of securities fraud, that Novo felt the in-house enzyme production of one of its customers would not have a material adverse impact on Novo's financial position, has already been held non-actionable by the Court's previous opinion.[7] Although plaintiff has quoted more extensively from the report in his amended complaint, he has nevertheless failed to allege any facts upon which an inference of wrongdoing may be gleaned or is reasonably warranted from defendant's statements. Plaintiff has not alleged facts showing that this statement was untrue or that defendant had any reason to believe that this statement was fraudulent. To the contrary, the statement taken as a whole clearly "bespeaks caution"[8] by informing the public that a primary customer may not be purchasing its enzymes from Novo to the extent of its previous purchases, and therefore is not actionable under Section 10(b).

■ Plaintiff urges as further evidence of the alleged fraud another portion of the 1983 Form 20–F stating that Novo's pharmaceutical sales increased by 28% in 1983 and 35% in 1982. While he does not dispute that these figures were accurate, plaintiff contends that this statement was misleading because it reinforced the "growth image of Novo and the prior sales projection of at least 20–25% annually."[9] This assertion is meritless. The statement is confined to Novo's past growth in pharmaceutical sales and says nothing about possible future growth. Moreover, to the extent that the increase in growth was greater in 1982 than it was in 1983, the figures reveal a *decrease* in the growth rate for the pharmaceutical division. It strains credulity to think that truthful, objective statistics concerning a company's prior performance and revealing a decrease in its growth rate, serve to reinforce what plaintiff characterizes as a false image of the company's growth. Plaintiff has attributed no valid inference of wrongdoing to this statement, the accuracy of which he does not challenge. The statement is not misleading and states no cause of action under § 10(b).

### B. *The Wall Street Journal Article*

■ Plaintiff asserts that the statement attributed to Novo's president in the November 15, 1983 Wall Street Journal, wherein he predicted 20% to 25% annual growth for his company over the next five years, was made recklessly because: 1) defendant knew that it would lose business due to ADM's in-house enzyme manufacture; 2) defendant knew that distributors of its insulin were stockpiling their insulin inventories and would therefore not require as much as previously; 3) the optimistic projection was based on Novo's expectation of receiving FDA approval for a new insulin product even though Novo had "no reasonable assurance" that such approval would be obtained by a particular date; and 4) the projection included an expected increase in insulin sales to the United Kingdom for which there was no reasonable

7. *Schwartz v. Novo Industri, A/S,* 635 F.Supp. 1463, 1465 (S.D.N.Y.1986).

8. *See Goldman v. Belden,* 754 F.2d 1059, 1068 (2d Cir.1985), (*quoting Polin v. Conductron Corp.,* 552 F.2d 797, 806 n. 28 (8th Cir.), *cert.* denied, 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129 (1977)).

9. Amended Complaint, at para. 13.

basis because of the United Kingdom's change from using U–40 and U–80 insulin to U–100 insulin. Plaintiff further alleges that "there was a high risk that Novo's growth during the coming year would be substantially less than the projected 20–25% increase."[10]

To satisfy the particularity requirement of Fed.R.Civ.P. 9(b), a complaint must allege "(1) specific facts; (2) sources that support the alleged specific facts; and (3) a basis from which an inference of fraud may fairly be drawn."[11] While plaintiff asserts that Novo knew or should have known of the above-mentioned circumstances, plaintiff, other than these bare categorical allegations, offers no sources for the knowledge it seeks to impute to defendant. Moreover, plaintiff fails to demonstrate how, even if Novo had such knowledge, it would be fair to draw an inference of fraud from a statement appearing in a news article over which defendant had less than complete control.[12]

Recognizing that a complaint will not be dismissed unless the plaintiff can prove no set of facts which would entitle him to relief,[13] the Court holds that plaintiff's allegation of securities fraud in relation to the statement in the Wall Street Journal does not state a claim for relief under § 10(b). For his claim to survive, plaintiff is required to allege acts or conduct indicating an intent to deceive, manipulate or defraud.[14] The statement is nothing more than a judgment subsequently found to have been overly optimistic. Plaintiff fails to offer a single objective fact to suggest that the prediction was other than an honestly held view based on Novo's considered judgment given the information before it.[15] Rather, the complaint is an example of alleging "fraud by hindsight" and therefore not actionable under § 10(b) and Rule 10b–5.[16]

### C. The Post-Purchase Statements

■■■ Plaintiff purchased his Novo stock on August 3, 1984. The statements made on August 23, 24 and September 26, 1984, subsequent to plaintiff's purchase, are not in themselves actionable under Section 10(b).[17] Plaintiff, however, argues that the statements are circumstantial evidence of the fraud he alleges occurred prior to his stock purchase. Throughout this opinion, the Court has indeed viewed the three pre-purchase statements in light of subsequent events. Although plaintiff attempts to use these statements to bolster his complaint, none of them support an inference of fraud. Indeed, two of the three statements, set forth in the August 23, 1984 press release and the September 26, 1984 SEC Form 6–K, that Novo predict-

---

**10.** Amended Complaint, at para. 11.

**11.** *Crystal v. Foy,* 562 F.Supp. 422, 425 (S.D.N.Y. 1983). *See generally Nevitsky v. Manufacturers Hanover Brokerage Services,* 654 F.Supp. 116, 120 (S.D.N.Y.1987); *Beck v. Manufacturers Hanover Trust Co.,* 645 F.Supp. 675, 682 (S.D.N.Y. 1986); *Soper v. Simmons Int'l Ltd.,* 632 F.Supp. 244, 249 (S.D.N.Y.1986); *River Plate Reinsurance Co. v. Jay-Mar Group, Ltd.,* 588 F.Supp. 23, 26–27 (S.D.N.Y.1984); *Songbird Jet Ltd. v. Amax, Inc.,* 581 F.Supp. 912, 924–25 (S.D.N.Y. 1984), *aff'd without opinion,* 779 F.2d 39 (2d Cir.1985).

**12.** *See Milberg v. Western Pacific Railroad Co.,* 51 F.R.D. 280, 282 (S.D.N.Y.1970) (corporations not required to read every article printed about them and will not be held liable under § 10(b) and Rule 10(b)–5 for all inaccuracies therein), *appeal dismissed,* 443 F.2d 1301 (2d Cir.1971).

**13.** *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985).

**14.** *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 192 n. 7, 96 S.Ct. 1375, 1380 n. 7, 47 L.Ed.2d 668 (1976); *see also Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 473, 97 S.Ct. 1292, 1300, 51 L.Ed.2d 480 (1977) (mere negligence not actionable under section 10(b).)

**15.** *See Hahn v. Breed,* 587 F.Supp. 1369, 1379 (S.D.N.Y.1984).

**16.** *See Denny v. Barber,* 576 F.2d 465, 470 (2d Cir.1978).

**17.** *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 115 (2d Cir.1982); *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557–59 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Denny v. Barber,* 576 F.2d 465, 468–69 (2d Cir.1978); *Schwartz v. Novo Industries, A/S,* 635 F.Supp. 1463 (S.D.N.Y.1986); *Hahn v. Breed,* 587 F.Supp. 1369, 1379–80 (S.D.N.Y. 1984).

ed improvement in sales and earnings for the second half of 1984 over the first half, turned out to be true.

The third statement appeared in an August 24, 1984 press release and contained a projection that full-year sales for 1984 would increase by 20% over 1983. As discussed above, plaintiff could not have relied on this statement when making his stock purchase. The statement offers absolutely no evidence of fraudulent activity, but as with the other allegedly fraudulent statements, is merely evidence that Novo made faulty prognostications. Because no fraud exists in either this statement or in the three prepurchase statements, plaintiff's argument that the statement is circumstantial evidence of fraud is not supported.[18]

<center>Conclusion</center>

Defendant's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) is granted.

So ordered.

</center>

---

**18.** Plaintiff also makes the novel but unpersuasive argument that, although *he* may not be able to rely on statements made after he purchased the securities, certain members of the class he purports to represent may be able to do so, and the Court must therefore determine whether the three statements made after August 3, 1984 state a cause of action under § 10(b). As our Court of Appeals held in *Denny v. Barber,* 576 F.2d 465, 469 (2d Cir.1978), a plaintiff who cannot share in a recovery because no fraudulent statements were issued before his purchase is not a proper representative of persons who purchased securities after other allegedly fraudulent statements were issued. Because plaintiff is not a proper representative of the class he wishes to represent, the statements made subsequent to his purchase are not considered as primary evidence of fraud for purposes of this opinion.