In re COLUMBIA SECURITIES
LITIGATION.

Elizabeth M. MURRAY, John J.
Cavaliere, Jr. and David
Jaroslawicz, Plaintiffs,

v.

SONY CORPORATION, Sony USA, Inc.
and Michael Schulhof, Defendants.

No. 89 Civ. 6821 (LBS).

United States District Court,
S.D. New York.

Sept. 26, 1990.

---

Lowey Dannenberg Bemporad Brachtl & Selinger (Richard Bemporad, of counsel), New York City, for plaintiffs.

Skadden Arps Slate Meagher & Flom (Henry P. Wasserstein, Joseph Guglielmelli, Michael A. McIntosh, of counsel), New York City, for defendants Sony Corp. and Sony USA.

Rosenman & Colin (Joel W. Sternman, Richard N. Baer, of counsel), New York City, for defendant Michael Schulhof.

## OPINION

SAND, District Judge.

This securities fraud case [1] arises out of the acquisition of Columbia Pictures Entertainment, Inc. ("Columbia") by Sony USA, Inc. ("Sony USA"), a wholly owned subsidiary of the Sony Corporation ("Sony Japan"). Plaintiffs are former stockholders of Columbia who seek to maintain a class action on behalf of all persons who sold shares of Columbia common stock or call options between March 27, 1989 and September 25, 1989. Amended Complaint ¶ 9. Defendants are Sony USA, Sony Japan and Michael Schulhof, Chairman and President of Sony USA and a director of both Sony USA and Sony Japan. Amended Complaint ¶¶ 6–8.

Plaintiffs' amended complaint [2] attempts to state a cause of action under Securities and Exchange Commission Rule 10b–5,[3] which was promulgated pursuant to § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1988). Presently before this Court is defendants' motion to dismiss the amended complaint for failure to state a cause of action, Fed.R.Civ.P. 12(b)(6), and failure to plead fraud with sufficient particularity, Fed.R.Civ.P. 9(b). For the reasons stated below, defendants' motion is denied.

## I. BACKGROUND

The facts alleged in this case are relatively straightforward. Plaintiffs claim that during the spring and summer of 1989, defendants made statements to the press in which they falsely denied that merger negotiations between themselves and Columbia were underway. As a result of these false denials, plaintiffs and the class they seek to represent allegedly lost money when they sold their Columbia stock at artificially depressed prices.

According to plaintiffs' amended complaint, Sony Japan has had a longstanding interest in diversifying its business by expanding into other areas of the entertainment industry. In November, 1988, Sony Japan began to focus its attention on Columbia as a possible target for acquisition. Amended Complaint ¶ 19. Defendant Schulhof, who was acting on behalf of both Sony Japan and Sony USA, convened various meetings with executives of Columbia

---

**1.** This is a consolidated case. By order of the Honorable Robert Sweet dated November 15, 1989, the following cases were consolidated: 89 Civ. 6821, 89 Civ. 6970 and 89 Civ. 7222.

**2.** Defendants moved to dismiss plaintiffs' original complaint on February 23, 1990. Oral argument on the motion was heard on April 19, 1990. At that time, plaintiffs were given permission to file an amended complaint. The amended complaint was filed on May 9, 1990, whereupon defendants renewed their motion to dismiss on substantially the same grounds as initially asserted.

**3.** In relevant part, Rule 10b–5 provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national exchange . . .

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . ,

"in connection with the purchase or sale of any security."

17 C.F.R. § 240.10b–5 (1990).

and the Coca–Cola Company, which owned a substantial percentage of Columbia stock. Amended Complaint ¶¶ 8, 16, 21–23. Meetings and discussions between Schulhof and Columbia representatives continued during the spring and early summer of 1989. Amended Complaint ¶¶ 26–29. In July, 1989, the pace of negotiation quickened, and the acquisition plan was finalized during August, 1989. Amended Complaint ¶¶ 21, 29–33, 34–37. A formal merger proposal was made to Columbia's Board of Directors by Sony USA on September 25, 1989, and a successful tender offer followed at a price of $27 per share. Amended Complaint ¶¶ 39–44.

Plaintiffs allege that during early 1989, defendants adopted a policy of refusing to comment on the existence of negotiations between themselves and Columbia regarding the possible takeover. Amended Complaint ¶¶ 45–49. Subsequently, however, defendants abandoned this policy and began to deny falsely that discussions were underway. Amended Complaint ¶ 50. Specifically, plaintiffs point to three allegedly misleading press reports. The first is an article appearing in the April 3, 1989 edition of *Forbes* magazine (published on March 27th) which reported that "Sony" denied the existence of any merger discussions with Columbia. Plaintiffs allege that the denial referred to in the article was made by defendant Schulhof. Amended Complaint ¶ 50. The second press report is a June 21, 1989 *Reuters* dispatch which quoted defendant Schulhof and Masaaki Morita, an officer of both Sony Japan and Sony USA, as saying that defendants were not currently engaged in any effort to acquire Columbia. Amended Complaint ¶ 51(a). The third and final press report relied upon by plaintiffs is a story appearing in the June 22, 1989 edition of *The New York Times*, which apparently did no more than paraphrase the remarks attributed to

Mr. Schulhof and Mr. Morita in the *Reuters* dispatch. Amended Complaint ¶ 52.

Plaintiffs claim that the press statements described above were false and materially misleading because defendants were actively engaged in merger discussions with Columbia at the time the statements were made.[4] Amended Complaint ¶¶ 57–60. Plaintiffs further allege that as a result of the defendants' misrepresentations, the price of Columbia stock was artificially depressed from the time of the *Forbes* article until the time the merger agreement became public. Because they sold their Columbia stock during this period, plaintiffs suffered economic loss directly traceable to defendants' misrepresentations. Amended Complaint ¶¶ 61–63. Seeking redress, plaintiffs filed the present action.

## II. DISCUSSION

This case comes before the Court on defendants' motion to dismiss the amended complaint. In deciding the motion, this Court is required to accept plaintiffs' allegations as true and construe those allegations in the light most favorable to plaintiffs. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Ass'n,* 423 F.2d 188, 191 (2d Cir.1969), *cert. denied,* 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970). The complaint will be dismissed only if plaintiffs can prove no set of facts that would entitle them to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985).

■ In order to state a cause of action under Rule 10b–5, a plaintiff must demonstrate the existence of six elements. These are: (1) a misstatement or omission by the defendant; (2) as to a material fact; (3) plaintiff relied on the misstatement or omission; (4) defendant acted with scienter;

---

**4.** Plaintiffs allege, in the alternative, that even if the challenged press statements were literally true when made—that is, even if no merger discussions were then taking place—the statements would be actionable nonetheless because when discussions did resume the statements became materially misleading and the defendants

had a duty to correct. Amended Complaint ¶ 58. Because this Court finds that the plaintiffs have stated a cause of action and that they have pleaded the falsity of the statements with sufficient particularity to satisfy Fed.R.Civ.P. 9(b), it is not necessary to pass upon the merits of plaintiffs' alternative legal theory.

(5) the misstatement or omission was made in connection with the purchase or sale of securities; and (6) plaintiff suffered damage as a result of the misstatement or omission. *See Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 114 F.R.D. 48, 51 n. 2 (S.D.N.Y.1987); *Fisher v. Plessey Co., Ltd.,* 103 F.R.D. 150, 155 (S.D.N.Y. 1984). In their amended complaint, plaintiffs have made allegations directed towards establishing each of these elements. Plaintiffs allege that the press statements made by the defendants were false (¶¶ 23–29, 50–51) and material (¶¶ 50–51, 56); that the misstatements affected the market price of Columbia stock, upon which plaintiffs relied in deciding to sell (¶ 61); that defendants acted intentionally or recklessly (¶ 55); that plaintiffs sold Columbia common stock or options during the relevant period (¶ 5); and that plaintiffs suffered monetary loss (¶¶ 62–63).

In their motion to dismiss the amended complaint, defendants focus their attack primarily on the first three elements of plaintiffs' 10b–5 cause of action. Defendants advance five arguments in support of dismissal, each of which is addressed in turn below.

### 1. Insufficient Allegation that Press Statements were False and Misleading

■ Defendants' first challenge to the sufficiency of the amended complaint is the contention that plaintiffs have not alleged adequately that the press statements were false and misleading. Relying upon Fed.R. Civ.P. 9(b), defendants argue that plaintiffs have failed to allege facts from which it can be inferred that merger discussions between defendants and Columbia were underway at the time the press statements were made.

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake should be stated with particularity." Fed. R.Civ.P. 9(b). The purposes which Rule 9(b) seeks to accomplish are threefold: (1) to provide defendants with fair notice of the plaintiff's claim; (2) to protect defendants from unwarranted harm to their rep-

utations; and (3) to reduce the number of strike suits. *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). To these ends, Rule 9(b) requires that plaintiffs plead fraud claims with somewhat more specificity than is required for other types of claims. *See* 5 Wright & Miller, *Federal Practice and Procedure: Civil* § 1297 at 405 (Rule 9(b) "is a special pleading requirement and contrary to the general approach of simplified pleading adopted by the federal rules"); *see also Ross v. A.H. Robins Co., Inc.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

On the other hand, Rule 9(b) must be read in conjunction with Rule 8(a), which requires that complaints set out only a "short and plain statement of the claims for relief." Fed.R.Civ.P. 8(a); *see also DiVittorio,* 822 F.2d at 1247; *Ross,* 607 F.2d at 557 n. 20. Rule 9(b) "imposes no requirement of prolixity," *In re Coleco Sec. Litigation,* 591 F.Supp. 1488, 1490 (S.D.N.Y.1984); rather, it simply seeks to insure that the defendant has a fair opportunity to respond to the plaintiff's charges and is not required to answer naked or unsubstantiated allegations of fraud.

In this case, plaintiffs' claim that the press statements were false has been pleaded with sufficient particularity to satisfy Rule 9(b). Contrary to defendants' contentions, the amended complaint does allege facts which support the inference that when the press statements denying the existence of merger discussions were made, discussions were in fact taking place.

With regard to the time period in which the *Forbes* article appeared (late March, 1989), plaintiffs point to the Offer to Purchase promulgated by Sony USA in connection with its tender offer for Columbia's stock, and to an article appearing in the February, 1990 edition of *Vanity Fair* magazine. Amended Complaint ¶¶ 20, 24. The Offer to Purchase states that meetings between defendant Schulhof and representatives of Columbia took place in "early 1989," and that thereafter representatives of the two companies "continued investi-

gating the possibility" of an acquisition. *See* Amended Complaint ¶ 26. The *Vanity Fair* article, which plaintiffs allege to have been based at least in part on an interview with Mr. Schulhof, states that in February, 1989, Schulhof began to "zero in" on consummating the acquisition of Columbia. *See* Amended Complaint ¶ 24. It may be that neither the Offer to Purchase nor the article comes close to conclusively establishing that merger discussions were occurring in late March, 1989; yet the two documents do support an inference to that effect.

With regard to the time period in which the *Reuters* and *The New York Times* reports appeared (late June, 1989), plaintiffs likewise have alleged facts supporting an inference of misrepresentation. The amended complaint quotes a memorandum allegedly prepared by defendants which indicates that as of late August, 1989, plans to finalize the acquisition of Columbia had been underway for two months. *See* Amended Complaint ¶ 39. This allegation supports the inference that negotiations were occurring in late June, 1989.

This Court finds that plaintiffs have pleaded adequately that the press statements were misleading. The amended complaint identifies the time, place, speaker and content of the allegedly misleading statements. *See Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986) (Rule 9(b) requires pleading of time, place, speaker and content). It also alleges facts which support the inference that the press statements were false and misleading when made. Rule 9(b) requires no more. *See In re Coleco*, 591 F.Supp. at 1490 (10b-5 plaintiff need not expose "smoking gun" in pleadings in order to satisfy Rule 9(b)).

The complaint in the instant case falls well within the parameters of complaints that other courts have upheld against Rule 9(b) challenges. *See Credit & Finance Corp. Ltd. v. Warner & Swasey Co.*, 638 F.2d 563, 566 (2d Cir.1981) (complaint sufficient under Rule 9(b) where it alleged a number of particulars from which it could be inferred that corporate press release was materially false and misleading); *Di-*

*Vittorio*, 822 F.2d 1242, 1248 (2d Cir.1987) (complaint's 10b-5 allegations upheld against certain defendants, even though pleaded on information and belief, where plaintiff alleged specific facts supporting inference of fraud). *Contrast Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1004 (2d Cir.) (plaintiff's allegation that defendant's statement was false insufficient under Rule 9(b) where plaintiff alleged no specific facts to support inference of falsity), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988). For this reason, and for the reasons stated above, defendants' first challenge to the sufficiency of the complaint fails.

### 2. *Insufficient Allegation that Misstatements were Material*

■ Defendants' second argument in support of the motion to dismiss is that plaintiffs have failed to allege adequately that the press statements were *materially* misleading. Defendants argue that in order to be "material" under Rule 10b-5, merger discussions must have progressed to the point where consummation of the transaction is more likely than not. In this case, they argue, plaintiffs have not alleged that completion of the Columbia acquisition was more likely than not in either late March or late June. Therefore, according to defendants, there is no adequate allegation that the press statements were materially misleading and the complaint should be dismissed.

Defendants cite no support in the cases for the proposition that merger discussions are immaterial as a matter of law until consummation of the transaction is more likely than not, nor has this Court found any such case. Instead, defendants seize upon certain language in *Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), as support for their theory. In *Basic*, the Supreme Court determined that an omitted or misrepresented fact is material under Rule 10b-5 if it "would be viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* at 231–32, 108 S.Ct. at 983 (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S.

438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)). Applying this test to the question of when merger discussions become material, the Court stated that materiality depends upon "a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of company activity." *Id.* at 238, 108 S.Ct. at 987 (quoting *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 849 (2d Cir.1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969)). Defendants point to the Supreme Court's use of the word "probability" in its explanation of materiality and argue that this implies that a contemplated merger must be more likely than not in order for discussions about it to be material.[5]

This Court rejects defendants' argument because it is based on an erroneous reading of *Basic.* In *Basic*, the Supreme Court expressly eschewed the Third Circuit's "agreement in principle" test for materiality, under which merger negotiations were deemed immaterial as a matter of law until an agreement in principle was reached by the parties. *Basic*, 485 U.S. at 237, 108 S.Ct. at 986. While noting the advantages of a bright-line rule, *see id.* at 236, 108 S.Ct. at 985, the Court ultimately endorsed the fact-specific test for materiality discussed above. *See id.* at 238, 108 S.Ct. at 986 (materiality depends on balancing of chance that transaction will occur against magnitude of event). In this case, the "more likely than not" test urged by defendants is merely a reformulation of the bright-line rule rejected by the Supreme Court in *Basic.* Defendants' proposed rule ignores the Supreme Court's directive that "[n]o particular event or factor" is conclusive in deciding whether merger discussions are material. *See id.* at 239, 108 S.Ct. at 987. It also ignores the fact that a reasonable investor might view merger negotiations as extremely significant even before consummation of the transaction has become more likely than not. *See SEC v. Shapiro*, 494 F.2d 1301, 1306–07 (2d Cir.

1974) (finding materiality at point where transaction was not more likely than not to occur); *Dungan v. Colt Industries, Inc.*, 532 F.Supp. 832, 837 (N.D.Ill.1982).

The appropriate test for the materiality of the alleged misstatements in this case is the fact-specific inquiry set out in *Basic*—whether, balancing the probability of the merger's consummation against its importance to Columbia, there is a substantial likelihood that a reasonable investor would have viewed the existence of merger discussions as significantly altering the "total mix" of information available. *See Basic*, 485 U.S. at 231–32, 108 S.Ct. at 983. In evaluating materiality in this case, it must also be borne in mind that

> [s]ince a merger in which it is bought out is the most important event that can occur in a small corporation's life, to wit, its death, ... information, as regards a merger ... can become material at an earlier stage than would be the case as regards lesser transactions....

*Id.* at 238, 108 S.Ct. at 987 (quoting *SEC v. Geon Industries, Inc.*, 531 F.2d 39, 47 (2d Cir.1976)).

■ Applying these standards to the case at bar, this Court concludes that plaintiffs have pleaded adequately that the press statements were materially misleading. As to the probability of the Columbia acquisition taking place at the time of the press statements, plaintiffs have alleged several facts which tend to show "indicia of interest in the transaction at the highest corporate level." *Basic*, 485 U.S. at 239, 108 S.Ct. at 987. Plaintiffs claim that meetings between top executives of Sony Japan, Sony USA and Columbia occurred throughout the period February to July, 1989. Amended Complaint ¶¶ 25–28. Plaintiffs also allege that by February, 1989, defendant Schulhof, the then Deputy President of Sony USA, had concluded that Columbia was the target and had begun to "zero in" on the deal. Amended Complaint ¶ 33. Plaintiffs further allege that by late

---

5. In support of this conclusion, defendants cite creatively to *INS v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987), in which the Court interpreted the phrase "clear

probability of persecution" as meaning "more likely than not." *Id.* at 430, 107 S.Ct. at 1212–13. Suffice it to say that the standard at issue in that case is not determinative here.

June, 1989, the defendants had begun to "finalize" their plans to acquire Columbia. Amended Complaint ¶ 33. These allegations indicate an ongoing interest in and pursuit of the transaction at the highest corporate levels. With regard to the "magnitude" part of the balancing test, defendants do not contest that the merger was, from Columbia's standpoint, an event of substantial magnitude. *See* Defendants' Memorandum of Law at 24.

In view of the allegations demonstrating substantial indicia of interest, and the importance of the transaction in the life of Columbia, this Court concludes that a reasonable Columbia stockholder might have viewed disclosure of the alleged merger negotiations as altering the total mix of information available at the time the press statements were made. Therefore, defendants' second argument is without merit.

### 3. *Failure to State a Claim against Sony Japan*

■ Defendants' third contention is that the amended complaint should be dismissed as against Sony Japan because it fails to allege adequately that Sony Japan was responsible for the claimed misrepresentations. Defendants urge that plaintiffs have not alleged facts capable of supporting an inference that the speakers who allegedly made the misstatements were authorized to speak on behalf of Sony Japan.

According to the amended complaint, the misrepresentations at issue in this case were made by two individuals: defendant Schulhof (the *Forbes* and *Reuters* reports, the latter of which was paraphrased in *The New York Times* article); and Masaaki Morita (the *Reuters* report). Amended Complaint ¶¶ 50–51. When the press statements were made, defendant Schulhof was the Deputy President of Sony USA and Mr. Morita was the Deputy President of Sony Japan and the Chairman of Sony USA. Amended Complaint ¶¶ 8, 50–51.

While employees do not always possess actual or apparent authority to speak for their employers, *cf. Zigabarra v. Falk,* 143 A.D.2d 901, 902, 533 N.Y.S.2d 536, 538 (2d Dept.1988), it is well-established that corporations may be held responsible for fraud or deceit committed by their officers in the course of employment and for the benefit of the corporation. *See generally* 10 *Fletcher Cyc Corp* § 4886 (1986). Here, plaintiffs have expressly alleged that both Mr. Schulhof and Mr. Morita were authorized to speak on behalf of Sony Japan. Amended Complaint ¶¶ 8(d)–(e), 51(b). Moreover, plaintiffs have alleged several other facts which support the inference that Mr. Schulhof and Mr. Morita were acting as agents of Sony Japan. These include the allegations that: (1) Mr. Schulhof acted as an agent for Sony Japan in the acquisition of CBS Records, Inc. in 1988 (¶ 19); (2) it was Sony Japan, acting through Sony USA, that wished to acquire Columbia (¶¶ 19–20); (3) Mr. Morita was an officer and director of Sony Japan at the time of his alleged misrepresentation (¶ 51(b)); (4) Mr. Schulhof was identified in the *Reuters* dispatch as a director of Sony Japan (¶ 51); and (5) prior to the consummation of the merger, Mr. Schulhof was made a director of Sony Japan (¶ 8(c)). These allegations, taken together, create a sufficient nexus between Sony Japan and Messrs. Schulhof and Morita such that it can be inferred, for purposes evaluating the sufficiency of the complaint, that any fraud committed by those individuals is attributable to Sony Japan.

This is not a case, like *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242 (2d Cir.1987), in which a plaintiff unfairly attempts to "lump together" unrelated defendants in general allegations of wrongdoing. *See id.* at 1248–49 (complaint dismissed as against certain defendants whose participation in alleged fraud was not specified). In this case, plaintiffs have specified the incidents of wrongdoing, asserted the existence of an agency relationship between Sony Japan and the putative wrongdoers, and alleged facts supporting the existence of an agency relationship. As such, the amended complaint clearly informs Sony Japan of "the nature of ... [its] alleged participation in the fraud." *DiVittorio,* 822 F.2d at 1247. Consequently, plaintiffs will be allowed to pursue their claim against Sony Japan.

### 4. Insufficiency of Forbes Article as Basis for Fraud Claim

In their fourth argument, defendants assert that the *Forbes* article, the first of the allegedly misleading press reports, cannot serve as a basis for plaintiffs' fraud claim. Relying on *Schwartz v. Novo Industri, A/S*, 658 F.Supp. 795 (S.D.N.Y. 1987), defendants argue that because they had "less than complete control" over the content of the *Forbes* article, *cf. id.* at 799, it is unfair to permit plaintiffs to use the article as a basis for their fraud claim.

This Court is satisfied that it is not unfair at this stage of the proceedings to permit plaintiffs to rely on the *Forbes* article. Plaintiffs claim that the statement appearing in the article was made by defendant Schulhof to *Forbes* reporter Lisa Gubernick. Amended Complaint ¶ 50(b). While defendants certainly had less than complete control over what the reporter wrote, they did have control over what Mr. Schulhof said. If, as plaintiffs allege, Mr. Schulhof made a false statement to the *Forbes* reporter, that statement may properly serve as a basis for plaintiffs' fraud claim.

The two cases primarily relied upon by defendants—*Schwartz* and *Milberg v. Western Pac. R.R. Co.*, 51 F.R.D. 280 (S.D. N.Y.1970), are not to the contrary. In *Schwartz*, the court dismissed a complaint based on a *Wall Street Journal* article containing an overly optimistic forecast of the defendant corporation's future prospects. The forecast was allegedly supplied to the *Journal* by the defendant's president. *See Schwartz*, 658 F.Supp. at 798. The court, in dicta, expressed concern about making the defendant responsible for a newspaper article over which it had less than complete control, *see id.* at 799; however, the court's holding was that the *Journal* article was non-actionable because it contained merely opinions, and not facts. *See id.* In the case at bar, the alleged misstatement concerns a question of fact— whether merger negotiations with Columbia were or were not taking place. Therefore, the analysis applied in *Schwartz* is not determinative here.

The *Milberg* case involved a motion for class certification in a 10b–5 action based on an article about Western Pacific that appeared in *Barron's Weekly*. *See Milberg*, 51 F.R.D. at 281. The court expressed doubt about the viability of the action, in part because the complaint did not allege that Western Pacific officials had made the statements printed in *Barron's*. *See id.* at 282. The court stated that in the absence of such an allegation, to sustain the cause of action would be tantamount to adopting a rule requiring corporations to read and correct every article written about them in the press. *See id.* In the instant case, however, the amended complaint does allege that the misleading press statements were made by the defendants and their agents. Plaintiffs' claim in this case does not depend upon the adoption of a rule requiring corporations to read and correct all press coverage about them; rather, it rests on the relatively non-controversial proposition that when corporate spokesmen make statements to the press, they must speak truthfully or risk 10b–5 liability. Thus, *Schwartz* and *Milberg* are easily distinguishable and defendants' fourth argument is rejected.

### 5. Inapplicability of Fraud on the Market Theory

Defendants' final argument attacks the sufficiency of plaintiffs' allegations regarding the reliance element of their 10b–5 cause of action. In the amended complaint, plaintiffs seek to take advantage of the rebuttable presumption of reliance founded upon the "fraud on the market theory." *See* Amended Complaint ¶ 61. As described in *Basic, supra*, the fraud on the market theory

> is based on the hypothesis that, in open and developed securities markets, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not rely directly on the misstatements.... The causal connection between the defendant's fraud and the plaintiff's purchase of

**246**

stock is no less significant in such a case than in a case of direct reliance on misrepresentations.

*Basic,* 485 U.S. at 241–42, 108 S.Ct. at 988–89 (quoting *Peil v. Speiser,* 806 F.2d 1154, 1160–61 (3d Cir.1986)).

 Defendants argue that plaintiffs cannot take advantage of the fraud on the market theory in this case [6] to the extent they claim that defendants acted recklessly, as opposed to intentionally.[7] According to defendants, the fraud on the market theory applies only in cases involving intentional misconduct.

In making this argument, defendants essentially are asking this Court to adopt a new rule of law. Their proposed rule finds no support in *Basic,* as defendants tacitly acknowledge by failing to cite to that case. Defendants rely instead on *In re Gulf Oil/Cities Service Tender Offer Litigation,* 725 F.Supp. 712 (S.D.N.Y.1989) ("Gulf Oil"), which they cite for the proposition that in order to invoke the fraud on the market theory, plaintiffs must show that the "defendants made the fraudulent misrepresentation with the intent that the false information reach the market so as to affect the stock's price." *Id.* at 752. In this regard, defendants misread *Gulf Oil.* There, plaintiffs attempted to base their 10b–5 claim on false information communicated secretly from the offeror to the target. The information was never, in fact, made public. *See id.* at 753. On those facts, the *Gulf Oil* court logically concluded that the fraud on the market theory was inapplicable because the false information was "wholly extraneous to the market," *id.* at 752 (quoting *Grossman v. Waste Management, Inc.,* 100 F.R.D. 781, 788 (N.D.Ill.1984)), in that the information never made its way into the market to affect price. What the court meant by the above-quoted remark regarding "intent" is that

the defendant must intend that the misrepresentation reach the public in some way, not that the defendant must intend to affect the stock's price.

In addition to lacking support in the cases, defendants' argument is flawed in that it confuses the scienter and reliance elements of a 10b–5 cause of action. The fraud on the market theory is a theory of reliance. It posits that in well-developed capital markets, investors may be presumed to rely on material misrepresentations because those misrepresentations will affect the market price of the relevant stock. *See Basic,* 485 U.S. at 241–42, 108 S.Ct. at 988–89. There is simply no logical relationship between this relevance theory and Rule 10b–5's intent requirement. The fraud on the market theory posits that material misrepresentations affect market price; the state of mind of the speaker is completely irrelevant. Therefore, this Court concludes that plaintiffs may rely upon the fraud on the market theory in pleading their reliance on defendants' alleged misrepresentations.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss the amended complaint is denied.

SO ORDERED.

---

**6.** In their initial Memorandum of Law, defendants argued that the fraud on the market theory is inapplicable where, as here, the alleged misrepresentations were made by the acquiring company, and not by the target company in which plaintiffs owned stock. *See* Defendants' Memorandum of Law at 38–45. Defendants did not pursue this argument in their supplemental memorandum submitted after the filing of the amended complaint. In this Court's view, defendant's first argument is without merit for substantially the same reasons discussed herein.

**7.** In the amended complaint, plaintiffs allege that defendants' conduct was intentional, or, in the alternative, reckless. *See* Amended Complaint ¶¶ 54, 60–61.